## CITY OF CHICAGO ET AL. v. INTERNATIONAL COLLEGE OF SURGEONS ET AL.

No. 96–910.   Argued October 14, 1997—Decided December 15, 1997

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and SCALIA, KENNEDY, SOUTER, THOMAS, and BREYER, JJ., joined. GINSBURG, J., filed a dissenting opinion, in which STEVENS, J., joined, *post*, p. 175.

*Benna Ruth Solomon* argued the cause for petitioners. With her on the briefs were *Lawrence Rosenthal* and *Anne Berleman Kearney.*

*Richard J. Brennan* argued the cause for respondents. With him on the brief were *Kimball R. Anderson* and *Thomas C. Cronin.**

JUSTICE O'CONNOR delivered the opinion of the Court.

The city of Chicago, like municipalities throughout the country, has an ordinance that provides for the designation and protection of historical landmarks. Chicago Municipal Code, Art. XVII, §§ 2-120-580 through 2-120-920 (1990). The city's Landmarks Ordinance is administered by the Commission on Chicago Historical and Architectural Landmarks (Chicago Landmarks Commission or Commission). Pursuant to the Illinois Administrative Review Law, Ill. Comp. Stat., ch. 735, §§ 5/3-103, 5/3-104 (Supp. 1997), judicial review of final decisions of a municipal landmarks commission lies in state circuit court. In this case, we are asked to consider whether a lawsuit filed in the Circuit Court of Cook County seeking judicial review of decisions of the Chicago Landmarks Commission may be removed to federal district court, where the case contains both federal constitutional and state administrative challenges to the Commission's decisions.

I

Respondents International College of Surgeons and the United States Section of the International College of Surgeons (jointly ICS) own two properties on North Lake Shore Drive in the city of Chicago. In July 1988, the Chicago Landmarks Commission made a preliminary determination that seven buildings on Lake Shore Drive, including two

---

*Briefs of *amici curiae* urging reversal were filed for the State of Indiana by *Jeffrey A. Modisett,* Attorney General, and *Geoffrey Slaughter* and *Anthony Scott Chinn,* Deputy Attorneys General; for Defenders of Property Rights by *Nancie G. Marzulla;* and for the National Trust for Historic Preservation et al. by *Paul M. Smith, Elizabeth S. Merritt, Laura S. Nelson,* and *Edith M. Shine.*

mansions on ICS' properties, qualified for designation as a landmark district under the city's Landmarks Ordinance. In June 1989, the city council enacted an ordinance (the Designation Ordinance) designating the landmark district.

In February 1989, after the Commission's preliminary determination, ICS executed a contract for the sale and redevelopment of its properties. The contract called for the developer, whose interest has since been acquired by respondent Robin Construction Company, to demolish all but the facades of the two mansions and to construct a high-rise condominium tower. In October 1990, ICS applied to the Landmarks Commission for the necessary permits to allow demolition of a designated landmark. The Commission denied the permit applications, finding that the proposed demolition would "adversely affect and destroy significant historical and architectural features of the [landmark] district." App. 49. ICS then reapplied for the permits under a provision of the Landmarks Ordinance allowing for exceptions in cases of economic hardship. The Commission again denied the applications, finding that ICS did not qualify for the hardship exception.

Following each of the Commission's decisions, ICS filed actions for judicial review in the Circuit Court of Cook County pursuant to the Illinois Administrative Review Law. Both of ICS' complaints raised a number of federal constitutional claims, including that the Landmarks and Designation Ordinances, both on their face and as applied, violate the Due Process and Equal Protection Clauses and effect a taking of property without just compensation under the Fifth and Fourteenth Amendments, and that the manner in which the Commission conducted its administrative proceedings violated ICS' rights to due process and equal protection. The complaints also sought relief under the Illinois Constitution as well as administrative review of the Commission's decisions denying the permits.

The defendants (collectively City), who are petitioners in this Court, removed both lawsuits to the District Court for the Northern District of Illinois on the basis of federal question jurisdiction. The District Court consolidated the cases. After dismissing some of the constitutional claims and exercising supplemental jurisdiction over the state law claims, the court granted summary judgment in favor of the City, ruling that the Landmarks and Designation Ordinances and the Commission's proceedings were consistent with the Federal and State Constitutions, and that the Commission's findings were supported by the evidence in the record and were not arbitrary and capricious.[1]

The Court of Appeals for the Seventh Circuit reversed and remanded the case to state court, concluding that the District Court was without jurisdiction. 91 F. 3d 981 (1996). The Seventh Circuit began its analysis by construing this Court's decisions in *Chicago, R. I. & P. R. Co.* v. *Stude*, 346 U. S. 574 (1954), and *Horton* v. *Liberty Mut. Ins. Co.*, 367 U. S. 348 (1961), which it read to suggest that "the character of the state judicial action" is significant when assessing whether proceedings to review state and local administrative decisions can be removed to federal court. 91 F. 3d, at 988. The court reasoned that, while *Stude* and *Horton* establish that proceedings to conduct *de novo* review of state agency action are subject to removal, the propriety of removing proceedings involving deferential review is still an open question. Relying on decisions from other Courts of Appeals that interpret the scope of a district court's diversity jurisdiction, the court determined that deferential review of state agency action was an appellate function that was "inconsist-

---

[1] The District Court also dismissed a third action filed by ICS, which is not in issue here. That action sought review of ICS' unsuccessful efforts to obtain approval for its proposed development under the Lake Michigan and Chicago Lakefront Protection Ordinance, Chicago Municipal Code, ch. 194B (1973), which, in addition to the Designation Ordinance, restricts modification of ICS' properties.

ent with the character of a court of original jurisdiction."
91 F. 3d, at 990 (citing *Fairfax County Redevelopment &
Housing Authority* v. *W. M. Schlosser Co.*, 64 F. 3d 155 (CA4
1995), and *Armistead* v. *C & M Transport, Inc.*, 49 F. 3d 43
(CA1 1995)). Accordingly, the court concluded, a proceeding
to review state administrative action under a deferential
standard is not a "civil action" within a district court's "origi-
nal jurisdiction" under the removal statute, 28 U. S. C.
§ 1441(a), and so cannot be removed. 91 F. 3d, at 990.

The court then applied those principles to this case. The
court began by observing that, under the Illinois Administra-
tive Review Law, judicial review of local administrative deci-
sions is deferential and not *de novo*, because the reviewing
court must accept the agency's findings of fact as presump-
tively correct and cannot hear new evidence. *Id.*, at 991–992
(discussing Ill. Comp. Stat., ch. 735, § 5/3–110 (Supp. 1997)).[2]
Of the various claims raised in ICS' complaints, the court
explained, the as-applied constitutional challenges and the
claims requesting administrative review of the Commission's
decisions are bound by the administrative record, but the
facial constitutional challenges are independent of the record
and so would be removable to federal court if brought alone.
The court then addressed whether, "when the state action
involves both claims that, if brought alone, would be remov-
able to federal court [and] issues that clearly are grounded
in the administrative record, removal of the entire state ac-
tion to the district court is possible." 91 F. 3d, at 993. The
court ruled that, because some of the claims involve deferen-

---

[2] Section 5/3–110 provides: "Every action to review any final administra-
tive decision shall be heard and determined by the court with all conven-
ient speed. The hearing and determination shall extend to all questions
of law and fact presented by the entire record before the court. No new
or additional evidence in support of or in opposition to any finding, order,
determination or decision of the administrative agency shall be heard by
the court. The findings and conclusions of the administrative agency on
questions of fact shall be held to be prima facie true and correct."

tial review, "the case removed to the district court cannot be termed a 'civil action . . . of which the district courts . . . have original jurisdiction' within the meaning of" the removal statute. *Id.*, at 994 (quoting 28 U. S. C. § 1441(a)).

We granted certiorari to address whether a case containing claims that local administrative action violates federal law, but also containing state law claims for on-the-record review of the administrative findings, is within the jurisdiction of federal district courts. 520 U. S. 1164 (1997). Because neither the jurisdictional statutes nor our prior decisions suggest that federal jurisdiction is lacking in these circumstances, we now reverse.

## II

### A

We have reviewed on several occasions the circumstances in which cases filed initially in state court may be removed to federal court. See, *e. g.*, *Caterpillar Inc.* v. *Williams*, 482 U. S. 386, 391–392 (1987); *Metropolitan Life Ins. Co.* v. *Taylor*, 481 U. S. 58, 63 (1987); *Franchise Tax Bd. of Cal.* v. *Construction Laborers Vacation Trust for Southern Cal.*, 463 U. S. 1, 7–12 (1983). As a general matter, defendants may remove to the appropriate federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U. S. C. § 1441(a). The propriety of removal thus depends on whether the case originally could have been filed in federal court. *Caterpillar Inc.*, *supra*, at 392; *Franchise Tax Bd.*, *supra*, at 8. The district courts have original jurisdiction under the federal question statute over cases "arising under the Constitution, laws, or treaties of the United States." § 1331. "It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co.*, *supra*, at 63.

In this case, there can be no question that ICS' state court complaints raised a number of issues of federal law in the form of various federal constitutional challenges to the Landmarks and Designation Ordinances, and to the manner in which the Commission conducted the administrative proceedings. It is true, as ICS asserts, that the federal constitutional claims were raised by way of a cause of action created by state law, namely, the Illinois Administrative Review Law. See *Howard* v. *Lawton*, 22 Ill. 2d 331, 333, 175 N. E. 2d 556, 557 (1961) (constitutional claims may be raised in a complaint for administrative review). As we have explained, however, "[e]ven though state law creates [a party's] causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law." *Franchise Tax Bd.*, 463 U. S., at 13; see also *id.*, at 27–28 (case arises under federal law when "federal law creates the cause of action or . . . the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law"); *Gully* v. *First Nat. Bank in Meridian*, 299 U. S. 109, 112 (1936) (federal question exists when a "right or immunity created by the Constitution or laws of the United States [is] an element, and an essential one, of the plaintiff's cause of action"). ICS' federal constitutional claims, which turn exclusively on federal law, unquestionably fit within this rule. Accordingly, ICS errs in relying on the established principle that a plaintiff, as master of the complaint, can "choose to have the cause heard in state court." *Caterpillar Inc.*, 482 U. S., at 398–399. By raising several claims that arise under federal law, ICS subjected itself to the possibility that the City would remove the case to the federal courts. See *ibid.*

As for ICS' accompanying state law claims, this Court has long adhered to principles of pendent and ancillary jurisdiction by which the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law

claims that "derive from a common nucleus of operative fact," such that "the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" *Mine Workers* v. *Gibbs,* 383 U. S. 715, 725 (1966); see *Hurn* v. *Oursler,* 289 U. S. 238 (1933); *Siler* v. *Louisville & Nashville R. Co.,* 213 U. S. 175 (1909). Congress has codified those principles in the supplemental jurisdiction statute, which combines the doctrines of pendent and ancillary jurisdiction under a common heading. 28 U. S. C. § 1367. The statute provides, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." § 1367(a). That provision applies with equal force to cases removed to federal court as to cases initially filed there; a removed case is necessarily one "of which the district courts . . . have original jurisdiction." See § 1441(a); *Carnegie-Mellon Univ.* v. *Cohill,* 484 U. S. 343, 350–351 (1988) (discussing pendent claims removed to federal court).

Here, once the case was removed, the District Court had original jurisdiction over ICS' claims arising under federal law, and thus could exercise supplemental jurisdiction over the accompanying state law claims so long as those claims constitute "other claims that . . . form part of the same case or controversy." § 1367(a). We think it clear that they do. The claims for review of the Commission's decisions are legal "claims," in the sense that that term is generally used in this context to denote a judicially cognizable cause of action. And the state and federal claims "derive from a common nucleus of operative fact," *Gibbs, supra,* at 725, namely, ICS' unsuccessful efforts to obtain demolition permits from the Chicago Landmarks Commission. That is all the statute requires to establish supplemental jurisdiction (barring an

express statutory exception, see § 1367(a)). ICS seemed to recognize as much in the amended complaint it filed in the District Court following removal, stating that the nonfederal claims "are subject to this Court's pendent jurisdiction." App. 143. We conclude, in short, that the District Court properly exercised federal question jurisdiction over the federal claims in ICS' complaints, and properly recognized that it could thus also exercise supplemental jurisdiction over ICS' state law claims.

## B

ICS, urging us to adopt the reasoning of the Court of Appeals, argues that the District Court was without jurisdiction over its actions because they contain state law claims that require on-the-record review of the Landmarks Commission's decisions. A claim that calls for deferential judicial review of a state administrative determination, ICS asserts, does not constitute a "civil action . . . of which the district courts of the United States have original jurisdiction" under 28 U. S. C. § 1441(a).

That reasoning starts with an erroneous premise. Because this is a federal question case, the relevant inquiry is not, as ICS submits, whether its state claims for on-the-record review of the Commission's decisions are "civil actions" within the "original jurisdiction" of a district court: The District Court's original jurisdiction derives from ICS' federal claims, not its state law claims. Those federal claims suffice to make the actions "civil actions" within the "original jurisdiction" of the district courts for purposes of removal. § 1441(a). The Court of Appeals, in fact, acknowledged that ICS' federal claims, "if brought alone, would be removable to federal court." 91 F. 3d, at 993. Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that ICS' complaints, by virtue of their federal claims, were "civil actions" within the federal courts' "original jurisdiction."

Having thus established federal jurisdiction, the relevant inquiry respecting the accompanying state claims is whether they fall within a district court's supplemental jurisdiction, not its original jurisdiction. And that inquiry turns, as we have discussed, on whether the state law claims "are so related to [the federal] claims . . . that they form part of the same case or controversy." § 1367(a); see *Gibbs, supra,* at 725, n. 12 (distinguishing between "the issue whether a claim for relief qualifies as a case 'arising under . . . the Laws of the United States' and the issue whether federal and state claims constitute one 'case' for pendent jurisdiction purposes"). ICS' proposed approach—that we first determine whether its state claims constitute "civil actions" within a district court's "original jurisdiction"—would effectively read the supplemental jurisdiction statute out of the books: The whole point of supplemental jurisdiction is to allow the district courts to exercise pendent jurisdiction over claims as to which original jurisdiction is lacking.

The dissent attributes a different line of argument to ICS. *Post,* at 186–187. That argument, roughly speaking, is that federal jurisdiction would lie over ICS' federal claims if they had been brought under 42 U. S. C. § 1983, because review would then range beyond the administrative record; but ICS deliberately confined review of its claims to the administrative record by raising them under the Illinois Administrative Review Law, thereby assuring itself a state forum. See Brief for Respondents 21–26. The essential premise of ICS' argument is that its actions arise solely under state law and so are not within the district courts' federal question jurisdiction, and that § 1367(a)—which presupposes a "civil action of which the district courts have original jurisdiction"—is thus inapplicable. *Id.,* at 15–21.

That reasoning is incorrect because ICS in fact raised claims not bound by the administrative record (its facial constitutional claims), see *supra,* at 162, and because, as we have explained, see *supra,* at 164, the facial and as-applied federal

constitutional claims raised by ICS "arise under" federal law for purposes of federal question jurisdiction. See *New Orleans Public Service, Inc.* v. *Council of City of New Orleans,* 491 U. S. 350, 372 (1989) ("[A] facial challenge to an allegedly unconstitutional . . . zoning ordinance" is a claim "which we would assuredly not require to be brought in state courts"). ICS submits, however, that although its complaints contain *some* claims that arise under federal law, its actions nonetheless do not fall within the district courts' original jurisdiction over federal questions. Brief for Respondents 20–21, 26. Understandably, ICS does not rest this proposition on the notion that its federal claims are so insubstantial as not to establish federal jurisdiction. See, *e. g., Merrell Dow Pharmaceuticals Inc.* v. *Thompson,* 478 U. S. 804, 817 (1986); *Duke Power Co.* v. *Carolina Environmental Study Group, Inc.,* 438 U. S. 59, 70–71 (1978); *Gibbs,* 383 U. S., at 725. It follows, then, that ICS' view that the district courts lack jurisdiction even over the *federal* claims in its actions stems from the mistaken idea—embraced by the court below, see 91 F. 3d, at 993–994, and n. 14—that the other, nonfederal claims somehow take the complaints in their entirety (including the federal claims) out of the federal courts' jurisdiction. ICS' rationale thus ultimately devolves into the erroneous argument we ascribe to it: that its state law claims for on-the-record review of the Commission's decisions must be "civil actions" within the district courts' "original jurisdiction" in order for its complaints to be removable to federal court.

## C

To the extent that ICS means to suggest not only that a claim involving deferential review of a local administrative decision is not a "civil action" in the "original jurisdiction" of the district courts, but also that such a claim can never constitute a claim "so related to claims . . . within such original jurisdiction that [it] form[s] part of the same case or controversy" for purposes of supplemental jurisdiction, we dis-

agree with its reasoning. There is nothing in the text of § 1367(a) that indicates an exception to supplemental jurisdiction for claims that require on-the-record review of a state or local administrative determination. Instead, the statute generally confers supplemental jurisdiction over "all other claims" in the same case or controversy as a federal question, without reference to the nature of review. Congress could of course establish an exception to supplemental jurisdiction for claims requiring deferential review of state administrative decisions, but the statute, as written, bears no such construction.

Nor do our decisions in *Chicago, R. I. & P. R. Co.* v. *Stude,* 346 U. S. 574 (1954), and *Horton* v. *Liberty Mut. Ins. Co.,* 367 U. S. 348 (1961), on which ICS principally relies, require that we read an equivalent exception into the statute. Both *Stude* and *Horton*—to the extent that either might be read to establish limits on the scope of federal jurisdiction—address only whether a cause of action for judicial review of a state administrative decision is within the district courts' original jurisdiction under the diversity statute, 28 U. S. C. § 1332, not whether it is a claim within the district courts' pendent jurisdiction in federal question cases. Even assuming, *arguendo*, that the decisions are relevant to the latter question, both *Stude* and *Horton* indicate that federal jurisdiction generally encompasses judicial review of state administrative decisions.

In *Stude*, for instance, a railroad company challenging the amount of a condemnation assessment attempted to establish federal jurisdiction by two separate routes. First, the railroad filed a complaint seeking review of the amount of the assessment in federal court on the basis of diversity jurisdiction, and second, it filed an appeal from the assessment in state court and then undertook to remove that case to federal court. As to the action filed directly in federal court, this Court upheld its dismissal, finding that state eminent domain proceedings were still pending and that the com-

plaint thus improperly attempted to "separate the question of damages and try it apart from the substantive right from which the claim for damages arose." 346 U. S., at 582. ICS emphasizes the Court's observation in this interlocutory context that a district court "does not sit to review on appeal action taken administratively or judicially in a state proceeding." *Id.*, at 581. By that remark, however, the Court did not suggest that jurisdiction turned on whether judicial review of the administrative determination was deferential or *de novo.* The decision, in fact, makes no reference to the standard of review.

Moreover, reading the Court's statement broadly to suggest that federal courts can never review local administrative decisions would conflict with the Court's treatment of the second action in the case: the railroad's attempt to remove its state court appeal to federal court. With respect to that action, the Court held that removal was improper in the particular circumstances because the railroad was the plaintiff in state court. But the Court observed that, as a general matter, a state court action for judicial review of an administrative condemnation proceeding is "in its nature a civil action and subject to removal by the defendant to the United States District Court." *Id.*, at 578–579; see *County of Allegheny* v. *Frank Mashuda Co.*, 360 U. S. 185, 195 (1959) ("Although holding that the respondent could not remove a state condemnation case to the Federal District Court on diversity grounds because he was the plaintiff in the state proceeding, the Court [in *Stude*] clearly recognized that the defendant in such a proceeding could remove in accordance with § 1441 and obtain a federal adjudication of the issues involved"). If anything, then, *Stude* indicates that the jurisdiction of federal district courts encompasses ICS' claims for review of the Landmarks Commission's decisions.

*Horton* is to the same effect, holding that a District Court had jurisdiction under the diversity statute to review a state

workers' compensation award. 367 U. S., at 352. The bulk
of the opinion addresses the central issue in the case,
whether the suit satisfied the amount-in-controversy thresh-
old for diversity jurisdiction. See *id.*, at 352–354; *id.*, at
355–363 (Clark, J., dissenting). But the plaintiff also al-
leged, based on *Stude*, that diversity jurisdiction was lacking
because the action was an appeal from a state administrative
order, to which the Court simply responded that, "[a]side
from many other relevant distinctions which need not be
pointed out," the suit in fact was a "trial *de novo*" and not
an appellate proceeding. 367 U. S., at 354–355. The Court
did not purport to hold that the *de novo* standard was a pre-
condition to federal jurisdiction.

Any negative inference that might be drawn from that as-
pect of *Horton*, even assuming that the decision speaks to
the scope of supplemental (and not diversity) jurisdiction,
would be insufficient to trump the absence of indication in
§ 1367(a) that the nature of review bears on whether a claim
is within a district court's supplemental jurisdiction. After
all, district courts routinely conduct deferential review pur-
suant to their original jurisdiction over federal questions, in-
cluding on-the-record review of federal administrative ac-
tion. See *Califano* v. *Sanders*, 430 U. S. 99, 105–107 (1977).
Nothing in § 1367(a) suggests that district courts are without
supplemental jurisdiction over claims seeking precisely the
same brand of review of local administrative determinations.
Cf. *Board of Ed. of Hendrick Hudson Central School Dist.,
Westchester Cty.* v. *Rowley*, 458 U. S. 176, 206 (1982) (inter-
preting Individuals with Disabilities Education Act, 20
U. S. C. § 1415(e), which contemplates deferential review of
state administrative action).

The dissent disagrees with our conclusion that 28 U. S. C.
§ 1367(a) encompasses state law claims for on-the-record re-
view of local administrative action, but it is unclear exactly
why, for the dissent never directly challenges our application

of that statute to ICS' claims. In fact, the dissent only makes passing reference to the terms of § 1367(a), which, in our view, resolve the case. In this light, the dissent's candid misgivings about attempting to square its position with the text of the jurisdictional statutes, see *post*, at 176, 183–184, are understandable. And the failure to come to grips with the text of § 1367(a) explains the dissent's repeated assumption, *post*, at 175, 177, 182, 185–186, that the jurisdictional analysis of diversity cases would be no different. But to decide that state law claims for on-the-record review of a local agency's decision fall within the district courts' "supplemental" jurisdiction under § 1367(a), does not answer the question, nor do we, whether those same claims, if brought alone, would substantiate the district courts' "original" jurisdiction over diversity cases under § 1332. Ultimately, the dissent never addresses this case as it is presented: a case containing federal questions within the meaning of § 1331 and supplemental state law claims within the meaning of § 1367(a).

## III

Of course, to say that the terms of § 1367(a) authorize the district courts to exercise supplemental jurisdiction over state law claims for on-the-record review of administrative decisions does not mean that the jurisdiction *must* be exercised in all cases. Our decisions have established that pendent jurisdiction "is a doctrine of discretion, not of plaintiff's right," *Gibbs*, 383 U. S., at 726, and that district courts can decline to exercise jurisdiction over pendent claims for a number of valid reasons, *id.*, at 726–727. See also *Cohill*, 484 U. S., at 350 ("As articulated by *Gibbs*, the doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values"). Accordingly, we have indicated that "district courts [should] deal with cases involving pendent claims in the manner that best serves the principles of econ-

omy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Id.*, at 357.

The supplemental jurisdiction statute codifies these principles. After establishing that supplemental jurisdiction encompasses "other claims" in the same case or controversy as a claim within the district courts' original jurisdiction, § 1367(a), the statute confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise:

> "(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
> "(1) the claim raises a novel or complex issue of State law,
> "(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> "(3) the district court has dismissed all claims over which it has original jurisdiction, or
> "(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U. S. C. § 1367(c).

Depending on a host of factors, then—including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims—district courts may decline to exercise jurisdiction over supplemental state law claims. The statute thereby reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Cohill, supra*, at 350. In this case, the District Court decided that those interests would be best served by exercising jurisdiction over ICS' state law claims. App. to Pet. for Cert. 45a–46a.

In addition to their discretion under § 1367(c), district courts may be obligated not to decide state law claims (or to stay their adjudication) where one of the abstention doctrines articulated by this Court applies. Those doctrines embody the general notion that "federal courts may decline to exercise their jurisdiction, in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest, for example where abstention is warranted by considerations of proper constitutional adjudication, regard for federal-state relations, or wise judicial administration." *Quackenbush* v. *Allstate Ins. Co.*, 517 U. S. 706, 716 (1996) (citations and internal quotation marks omitted). We have recently outlined the various abstention principles, see *ibid.*, and need not elaborate them here except to note that there may be situations in which a district court should abstain from reviewing local administrative determinations even if the jurisdictional prerequisites are otherwise satisfied.

## IV

The District Court properly recognized that it could exercise supplemental jurisdiction over ICS' state law claims, including the claims for on-the-record administrative review of the Landmarks Commission's decisions. ICS contends that abstention principles required the District Court to decline to exercise supplemental jurisdiction, and also alludes to its contention below that the District Court should have refused to exercise supplemental jurisdiction under 28 U. S. C. § 1367(c). We express no view on those matters, but think it the preferable course to allow the Court of Appeals to address them in the first instance. Accordingly, we reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE GINSBURG, with whom JUSTICE STEVENS joins, dissenting.

This now-federal case originated as an appeal in state court from a municipal agency's denials of demolition permits. The review that state law provides is classically appellate in character—on the agency's record, not *de novo.* Nevertheless, the Court decides today that this standard brand of appellate review can be shifted from the appropriate state tribunal to a federal court of first instance at the option of either party—plaintiff originally or defendant by removal. The Court approves this enlargement of district court authority explicitly in federal-question cases, and by inescapable implication in diversity cases, satisfied that "neither the jurisdictional statutes nor our prior decisions suggest that federal jurisdiction is lacking." *Ante,* at 163.

The Court's authorization of cross-system appeals qualifies as a watershed decision. After today, litigants asserting federal-question or diversity jurisdiction may routinely lodge in federal courts direct appeals from the actions of all manner of local (county and municipal) agencies, boards, and commissions. Exercising this cross-system appellate authority, federal courts may now directly superintend local agencies by affirming, reversing, or modifying their administrative rulings.

The Court relies on the statutory words found in both 28 U. S. C. §§ 1331 and 1332: "The district courts shall have original jurisdiction of all civil actions . . . ." Then, as its linchpin, the Court emphasizes the 1990 codification and expansion, in § 1367, of what previously had been known as "ancillary jurisdiction" and "pendent jurisdiction." Specifically, the Court stresses the broad authorization in § 1367(a) for district court exercise of "supplemental jurisdiction" over claims "so related" to a "civil action of which the district courts have original jurisdiction" as to "form part of the same [Article III] case or controversy." See *ante,* at 164–

169, 171–174.[1]   The bare words of §§ 1331, 1332, and 1367(a) permit the Court's construction.   For the reasons advanced in this opinion, however, I do not construe these prescriptions, on allocation of judicial business to federal courts of first instance, to embrace the category of appellate business at issue here.

The Court's expansive reading, in my judgment, takes us far from anything Congress conceivably could have meant. Cf. *Lynch* v. *Overholser*, 369 U. S. 705, 710 (1962) ("The decisions of this Court have repeatedly warned against the dangers of an approach to statutory construction which confines itself to the bare words of a statute, for 'literalness may strangle meaning.'") (citations omitted).   Cross-system appeals, if they are to be introduced into our federal system, should stem from the National Legislature's considered and explicit decision.   In accord with the views of the large majority of federal judges who have considered the question, I would hold the cross-system appeal unauthorized by Congress, and affirm the Seventh Circuit's judgment.

I

Until now it has been taken almost for granted that federal courts of first instance lack authority under §§ 1331 and 1332 to displace state courts as forums for on-the-record review of state and local agency actions.   In *Chicago, R. I. & P. R. Co.* v. *Stude*, 346 U. S. 574 (1954), we recalled the historic understanding: A federal district court "does not sit to review on appeal action taken administratively or judicially in

---

[1] The Court assumes, although § 1367 does not expressly so provide, that the section covers cases originating in a state court and removed to a federal court.   *Ante*, at 165.   Although the point has not been briefed, I do not question that assumption.   See Steinman, Supplemental Jurisdiction in § 1441 Removed Cases: An Unsurveyed Frontier of Congress' Handiwork, 35 Ariz. L. Rev. 305, 308–310 (1993) (observing that arguments against application of § 1367 to removed cases "are weak").

a state proceeding." *Id.*, at 581.[2] Cross-system appellate authority is entrusted to this Court, we said in *Rooker* v. *Fidelity Trust Co.*, 263 U. S. 413 (1923), but it is outside the domain of the lower federal courts. Interpreting the statutory predecessors of 28 U. S. C. §§ 1331 and 1257, we held in *Rooker* that a federal district court could not modify a decision of the Indiana Supreme Court, for only this Court could exercise such authority. 263 U. S., at 416.

Today, the Court holds that Congress, by enacting § 1367, has authorized federal district courts to conduct deferential, on-the-record review of local agency decisions whenever a federal question is pended to the agency review action. Dismissing, as irrelevant to jurisdiction, the distinction between *de novo* and deferential review, the Court also provides easy access to federal court whenever the dissatisfied party in a local agency proceeding has the requisite diverse citizenship. The Court does all this despite the overwhelming weight of lower federal court decisions disclaiming cross-system appellate authority, and without even a hint from Congress that so startling a reallocation of power from state courts to federal courts was within the national lawmakers' contemplation.[3]

---

[2] The Court in *Stude* also made the following statement: "When the proceeding has reached the stage of a perfected appeal and the jurisdiction of the state district court is invoked, it then becomes in its nature a civil action and subject to removal by the defendant to the United States District Court." *Chicago, R. I. & P. R. Co.* v. *Stude*, 346 U. S., at 578–579. This statement, made on the way to the Court's conclusion that the District Court *lacked* removal jurisdiction, does not carry great weight. It suggests that while the plaintiff in *Stude* could not have filed the action in federal court initially under § 1332, the defendant could have removed the action to federal court pursuant to § 1441(a). That suggestion is incorrect, for "[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc.* v. *Williams*, 482 U. S. 386, 392 (1987).

[3] The Court's holding can embrace the decisions of state, as opposed to local, agencies, only if the State consents to the district court's jurisdiction. In *Pennhurst State School and Hospital* v. *Halderman*, 465 U. S. 89 (1984),

I catalog first the decisions, in addition to the Seventh Circuit's, that the Court today overrides: *Volkswagen de Puerto Rico, Inc.* v. *Puerto Rico Labor Relations Bd.*, 454 F. 2d 38, 42 (CA1 1972) (permitting a district court to conduct on-the-record review of a decision of the Puerto Rico Labor Relations Board under § 1331 "would place a federal court in an improper posture vis-a-vis a non-federal agency"); *Armistead* v. *C & M Transport, Inc.*, 49 F. 3d 43, 47 (CA1 1995) ("As courts of *original* jurisdiction, federal district courts sitting in diversity jurisdiction do not have appellate power, nor the right to exercise supplementary equitable control over original proceedings in the state's administrative tribunals."); *Frison* v. *Franklin County Bd. of Ed.*, 596 F. 2d 1192, 1194 (CA4 1979) (District Court should have declined pendent jurisdiction over a state-law claim "because it is essentially a petition for judicial review of state administrative action rather than a distinct claim for relief"); *Fairfax County Redevelopment & Housing Auth.* v. *W. M. Schlosser Co.*, 64 F. 3d 155, 158 (CA4 1995) ("Because the district court is 'a court of original jurisdiction,' not 'an appellate tribunal,' and, thus, is without jurisdiction 'to review on appeal action taken administratively or judicially in a state proceeding,' it was without jurisdiction [under § 1332] to conduct such a review of the County Executive's finding.") (citations omitted); *Labiche* v. *Louisiana Patients' Compensation Fund Oversight Bd.*, 69 F. 3d 21, 22 (CA5 1995) ("We have reviewed [28 U. S. C. §§ 1330–1368] and none would authorize appellate review by a United States District Court of any actions

---

the Court held it would violate the Eleventh Amendment for a federal court to entertain, without the State's consent, "a claim that state officials violated state law in carrying out their official responsibilities." *Id.*, at 121. The Court further held that "this principle applies as well to state-law claims brought into federal court under pendent jurisdiction." *Ibid.* Notably, the Court commented in *Pennhurst:* "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.*, at 106.

taken by a state agency."); *Shamrock Motors, Inc.* v. *Ford Motor Co.*, 120 F. 3d 196, 200 (CA9 1997) ("When a state provides for administrative agency review of an appellate nature, rather than administrative review of a de novo nature, federal district courts have neither original jurisdiction nor removal jurisdiction over the review proceedings."); *Trapp* v. *Goetz*, 373 F. 2d 380, 383 (CA10 1966) (Under § 1332, "a United States District Court could not review an appeal action taken either administratively or judicially in a state proceeding."). Indeed, research discloses only a single Court of Appeals decision that has approved a federal district court's exercise of cross-system appellate review. See *Range Oil Supply Co.* v. *Chicago, R. I. & P. R. Co.*, 248 F. 2d 477, 478–479 (CA8 1957) (District Court could exercise removal jurisdiction over an appeal from a state railroad and warehouse commission once that appeal had been perfected in state court). As the Ninth Circuit said in *Shamrock Motors:* "[T]he prospect of a federal court sitting as an appellate court over state administrative proceedings is rather jarring and should not be quickly embraced as a matter of policy." *Shamrock Motors, Inc.* v. *Ford Motor Co.*, 120 F. 3d, at 200.

Until today, federal habeas corpus proceedings were the closest we had come to cross-system appellate review. See 28 U. S. C. §§ 2241–2254.[4] Unlike the jurisdictional reallocation the Court now endorses, habeas corpus jurisdiction does not entail *direct* review of a state or local authority's decision. See *Lambrix* v. *Singletary*, 520 U. S. 518, 523 (1997).

---

[4] The Court's citation to the Individuals with Disabilities Education Act (IDEA), *ante*, at 171, is unpersuasive for two reasons. First, IDEA has its own jurisdictional provision, so it does not concern §§ 1331, 1332, or 1367. See § 615 of the Individuals with Disabilities Education Act Amendments of 1997, Pub. L. 105–17, 111 Stat. 92, to be codified at 20 U. S. C. § 1415(i)(3)(A); *Zobrest* v. *Catalina Foothills School Dist.*, 509 U. S. 1, 4 (1993). Second, IDEA creates a *federal* regime. While IDEA may require federal courts to defer to state agency decisions, those decisions are made pursuant to *federal* legislation.

Notably, in providing for federal habeas corpus review, Congress has taken great care to avoid interrupting or intruding upon state-court processes. See, *e. g.*, 28 U. S. C. § 2254(b)(1) (1994 ed., Supp. III) (requiring exhaustion of state remedies before filing a federal petition for writ of habeas corpus). The Court's holding in this "Chicago" case, however, permits the federal court to supplant the State's entire scheme for judicial review of local administrative actions.

When a local actor or agency violates a person's federal right, it is indeed true that the aggrieved party may bring an action under 42 U. S. C. § 1983 without first exhausting state remedies. See *Patsy* v. *Board of Regents of Fla.*, 457 U. S. 496, 516 (1982). But such an action involves no disregard, as the cross-system appeal does, of the separateness of state and federal adjudicatory systems. In a § 1983 action, a federal (or state) court inquires whether a person, acting under color of state law, has subjected another "to the deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws." The court exercises original, not appellate, jurisdiction; it proceeds independently, not as substantial evidence reviewer on a nonfederal agency's record. As now-Chief Judge Posner explained:

> "[A] suit under 42 U. S. C. § 1983 is not a review proceeding even when . . . it challenges administrative action that has an adjudicative component. Federal courts have no general appellate authority over state courts or state agencies. . . . The case that is in federal court did not begin in the state agency but is an independent as well as an original federal action." *Hameetman* v. *Chicago*, 776 F. 2d 636, 640 (CA7 1985).

II

To reach its landmark result, the Court holds that a district court may perform cross-system appellate review of administrative agency decisions so long as the plaintiff's complaint also contains related federal claims, for "[t]hose federal

claims suffice to make the actions 'civil actions' within the 'original jurisdiction' of the district courts." *Ante*, at 166. Measuring today's disposition against prior decisions concerning proceedings in federal court following a state administrative decision, the Court, *ante*, at 169–171, takes up *Horton* v. *Liberty Mut. Ins. Co.*, 367 U. S. 348 (1961), and *Stude*, see *supra*, at 176–177, and n. 2.

*Horton* was a workers' compensation case proceeding in federal court on the basis of the parties' diverse citizenship. The contending parties were an injured worker and the insurance company that served as compensation carrier for the worker's employer. At the administrative stage, the Texas Industrial Accident Board made an award of $1,050. Neither side was satisfied. The insurer maintained that the worker was entitled to no compensation, while the worker urged his entitlement to the statutory maximum of $14,035. The insurer brought suit first, filing its complaint in federal court; one week later, the worker filed a state-court suit and sought dismissal of the insurer's federal action on alternative grounds: (1) the matter in controversy did not meet § 1332's monetary amount requirement (then "in excess of $10,000"); (2) the insurer's suit was "nothing more than an appeal from a state administrative order" and federal courts have "no appellate jurisdiction" over such orders, 367 U. S., at 354.

After concluding that the jurisdictional amount requirement was met, the Court turned to the question whether the federal-court proceeding was in fact an "appeal," and therefore barred under *Stude*, which, as the *Horton* Court described it, "held that a United States District Court was without jurisdiction to consider an appeal 'taken administratively or judicially in a state proceeding.'" 367 U. S., at 354 (quoting *Stude*, 346 U. S., at 581). On that matter, the Texas Supreme Court's construction of the State's compensation law left no room for debate. When suit commences, the administrative award is vacated and the court determines liability *de novo*. See 367 U. S., at 355, n. 15. The suit to set

aside an award is thus like any other first instance proceeding—it is "'a suit, not an appeal.'" *Id.*, at 354 (quoting *Booth* v. *Texas Employers' Ins. Assn.*, 132 Tex. 237, 246, 123 S. W. 2d 322, 328 (1938)).

Remarkably, the Court today asserts that neither *Stude* nor *Horton* "suggest[ed] that jurisdiction turned on whether judicial review of the administrative determination was deferential or *de novo.*" *Ante*, at 170; see also *ante*, at 171 ("The Court [in *Horton*] did not purport to hold that the *de novo* standard was a precondition to federal jurisdiction."). The Court thus casts aside the critical difference between fresh first instance proceedings not tied to a record made by a tribunal lower in the hierarchy, and on-the-record substantial evidence review, which cannot fairly be described as anything but appellate in character.

If, as the Court reasons today, the distinction between *de novo* and deferential review is inconsequential, then a district court may, indeed must, entertain cross-system, on-the-record appeals from local agency decisions—without regard to the presence or absence of any federal question— whenever the parties meet the diversity-of-citizenship requirement of § 1332. The Court so confirms by noting that, in accord with *Califano* v. *Sanders*, 430 U. S. 99, 105–107 (1977), "district courts routinely conduct deferential review [of federal administrative action] pursuant to their original jurisdiction over federal questions." *Ante*, at 171. Just as routinely, it now appears, district courts must "conduct deferential review [of local administrative action] pursuant to their original jurisdiction over [diversity cases]."

The Court's homogenization of *de novo* proceedings and appellate review rests on a single case, *Califano* v. *Sanders*. In *Sanders*, the Court settled a longstanding division of opinion over whether § 10 of the federal Administrative Procedure Act (APA), 5 U. S. C. §§ 701–704, ranked as an independent grant of subject-matter jurisdiction to federal courts, allowing them to review the actions of federal agencies,

without regard to the amount in controversy. The Court held that the APA "does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." 430 U. S., at 107. Nevertheless, the Court explained, district court review of federal administrative action—when Congress had not prescribed another review route or specifically excluded review—would persist. Congress had just dropped the amount-in-controversy requirement from § 1331, thus "fill[ing] the jurisdictional void." *Id.*, at 106. With the amount-in-controversy deleted, the Court indicated in *Sanders*, § 1331 would assure fidelity to the presumption that administrative action is subject to judicial review. See *id.*, at 105–106; *Abbott Laboratories* v. *Gardner*, 387 U. S. 136, 141 (1967) (courts generally hold agency action nonreviewable "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent"); see also *Barlow* v. *Collins*, 397 U. S. 159, 166 (1970) ("[J]udicial review of [federal] administrative action is the rule, and nonreviewability an exception which must be demonstrated.").

Whatever the reason for the rule implicit in *Sanders*—that federal district courts may engage in on-the-record, substantial evidence review of federal agency actions under § 1331—Chicago homes in on the statutory language. See Brief for Petitioners 11, 30, 39. Section 1331 reads: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." If deferential, on-the-record review of a *federal* agency's action qualifies as a "civil action" within a district court's "original jurisdiction," Chicago urges, then deferential, on-the-record review of local agency action must fit the same bill, *i. e.*, such review must qualify as a "civil action" within the district court's "original jurisdiction."

But one of these things is not necessarily like the other. I recognize that the bare and identical words "original jurisdiction" and "civil action" in §§ 1331 and 1332 comport with

Chicago's view and that of the Court. See *supra*, at 175. We would do well, however, to recall in this context a sage and grave warning: "The tendency to assume that a word which appears in two or more legal rules, and so in connection with more than one purpose, has and should have precisely the same scope in all of them, runs all through legal discussions. It has all the tenacity of original sin and must constantly be guarded against." Cook, "Substance" and "Procedure" in the Conflict of Laws, 42 Yale L. J. 333, 337 (1933).

Cases "arising under the Constitution, laws, or treaties of the United States" within the meaning of § 1331 compose a collection smaller than the one fitting within the similarly worded Clause in Article III of the Constitution, "Cases . . . arising under this Constitution, the Laws of the United States, and Treaties made." See, *e.g., Louisville & Nashville R. Co.* v. *Mottley,* 211 U. S. 149, 152 (1908); *Shoshone Mining Co.* v. *Rutter,* 177 U. S. 505, 513 (1900). Diversity of citizenship must be complete to proceed under § 1332, see *Strawbridge* v. *Curtiss,* 3 Cranch 267, 268 (1806), but it may be "minimal" in interpleader cases brought under § 1335, see *State Farm Fire & Casualty Co.* v. *Tashire,* 386 U. S. 523, 530–531 (1967).

Significantly, in assuming that § 1331 ordinarily would be available when a person complains about arbitrary federal administrative action, the Court in *Sanders* never fixed on the words of § 1331, and never even mentioned in relation to that provision the terms "civil action" or "original jurisdiction." The Court simply concluded from the legislative history that Congress meant to fill "an interstitial gap," 430 U. S., at 107, *i. e.,* Congress meant to hold federal agencies accountable by making their actions subject to judicial review.

Statutes like the Illinois Administrative Review Law, Ill. Comp. Stat., ch. 735, §§ 5/3–103, 5/3–104 (Supp. 1997), explicitly provide for state-court judicial review of state and local agency decisions. Unlike the federal picture the Court con-

fronted in *Sanders*, there is no void to fill. The gap to which *Sanders* attended—the absence of any forum for "nonstatutory" review of federal agency decisions unless § 1331 provided one—simply does not exist in a case brought under a state measure like the Illinois Administrative Review Law. I would therefore resist reading *Sanders* out of context to mandate cross-system appellate review of local agency decisions.

## III

Just last Term, two Members of today's majority recognized the vital interest States have in developing and elaborating state administrative law, for that law regulates the citizen's contact with state and local government at every turn, for example, in gaining life-sustaining public benefits, obtaining a license, or, as in this case, receiving a permit. Last Term's lead opinion observed:

> "In the States there is an ongoing process by which state courts and state agencies work to elaborate an administrative law designed to reflect the State's own rules and traditions concerning the respective scope of judicial review and administrative discretion. . . . [T]he elaboration of administrative law . . . is one of the primary responsibilities of the state judiciary. Where, as here, the parties invoke federal principles to challenge state administrative action, the courts of the State have a strong interest in integrating those sources of law within their own system for the proper judicial control of state officials." *Idaho* v. *Coeur d'Alene Tribe of Idaho*, 521 U. S. 261, 276 (1997) (principal opinion of KENNEDY, J., joined by REHNQUIST, C. J.).

Today's decision jeopardizes the "strong interest" courts of the State have in controlling the actions of local as well as state agencies. State court superintendence can now be displaced or dislodged in any case against a local agency in

which the parties are of diverse citizenship and in any case in which a Fourteenth Amendment plea can be made.

The Court insists that there is no escape from this erosion of state-court authority. Its explanation is less than compelling. The Court describes as the alternative "ICS' proposed approach." See *ante*, at 167. That approach, according to the Court, would have us determine first "whether [ICS's] state claims constitute 'civil actions' within a district court's 'original jurisdiction.'" *Ibid.* The Court then demolishes the supposed approach by observing that it "would effectively read the supplemental jurisdiction statute out of the books." *Ibid.*; see also *ante*, at 167–169.

I do not find in ICS's brief the approach the Court constructs, then destructs. Instead, the argument I do find, see Brief for Respondents 21–24, runs as follows. Chicago has tried to persuade the Court that ICS's "Complaints for Administrative Review are no different than civil rights actions." *Id.*, at 21. See Notice of Removal for Petitioner in No. 91 C 1587 (ND Ill.), App. 15 ("it appears from the face of plaintiffs' complaint that this is a civil rights complaint"). ICS acknowledged that it might have chosen to bypass on-the-record administrative review in state court, invoking federal jurisdiction under § 1983 instead, without exhausting state remedies. Brief for Respondents 22–24. Had ICS done so, review would have been "plenary in its scope" and would not have been "confined by the administrative record." *Id.*, at 24. But ICS did not take that path. It proceeded under the Illinois Administrative Review Law seeking resolution of both state-law and federal constitutional issues "in the context of on-the-record administrative review." *Id.*, at 22. The distinction between the appellate review it sought and the first instance action it did not bring "is crucial," ICS argued. *Ibid.*

In sum, from start to finish, ICS sought accurately to portray the Seventh Circuit's resistance to "federaliz[ing]," without explicit congressional instruction to do so, "garden-

variety appeals from . . . local administrative decisions," *id.*, at 3, appeals in which the federal issues ultimately raised "are inextricably intertwined with [the State's] administrative review scheme," *id.*, at 4. Not a case in which pendent or supplemental jurisdiction has ever been exercised is touched by the argument ICS in fact made, which trained constantly on the impropriety of cross-system appellate review. Far from urging the Court to "read the supplemental jurisdiction statute out of the books," *ante*, at 167, ICS simply asked the Court not to read into § 1367 more than any other tribunal has conceived to be there. What ICS sought to convey, the Court obscures: "[T]he City fail[ed] to cite a single case in which a federal court specifically assumed pendent or supplemental jurisdiction over an on-the-record state administrative appeal." Brief for Respondents 24, n. 11.

## IV

Even if the Court were correct in maintaining that Congress thrust local administrative agency on-the-record review proceedings into federal court at the option of either party, given diversity or an ultimate constitutional argument, the Court's reluctance to "articulat[e] general standards" for the guidance of the lower courts is puzzling. Cf. *Strickland* v. *Washington*, 466 U. S. 668, 698 (1984) (after "articulat[ing] general standards for judging ineffectiveness [of counsel] claims," the Court considered it "useful to apply those standards to the facts of th[e] case in order to illustrate the meaning of the general principles"). ICS, seeking such guidance, did not simply "allud[e] to" the District Court's extraordinary course. Cf. *ante*, at 174. This is a summary of the points ICS made in urging the impropriety of federal-court retention of the case, assuming, *arguendo*, federal-court power to keep it. The permits in question were sought under Chicago's Landmarks Ordinance, a measure "Illinois courts have never had an opportunity to interpret." Brief for Respondents 4. "The issues of Illinois constitu-

tional law raised by [ICS] have never been decided by Illinois appellate courts." *Ibid.* Land-use cases generally, and landmark designations particularly, implicate "local policies" and "local concerns." *Ibid.* Yet all this Court is willing to say is that "the District Court properly exercised federal question jurisdiction over the federal claims · in ICS' complaints, and properly recognized that it could thus also exercise supplemental jurisdiction over ICS' state law claims." *Ante*, at 166. The Court's opinion expresses "no [further] view." *Ante*, at 174.

The District Court disposed of ICS's federal equal protection and due process claims in less than 13 pages of its 63-page opinion, App. to Pet. for Cert. 33a–46a, and then devoted over 40 pages more to the state-law claims. *Id.*, at 46a–89a. That court wrote at greatest length on whether the Landmarks Commission's conclusions were "Against the Manifest Weight of the Evidence." *Id.*, at 73a–89a. Finally, the District Court "affirm[ed] the Commission's decisions." *Id.*, at 89a. It would have been in order for this Court to have recalled, in face of the District Court's federal-claims-first approach, the "fundamental rule of judicial restraint" that federal courts "will not reach constitutional questions in advance of the necessity of deciding them." *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering, P. C.*, 467 U. S. 138, 157 (1984). As a rule, potentially dispositive state-law challenges, not ultimate constitutional questions, should be cleared first. See, *e. g., Hagans v. Lavine*, 415 U. S. 528, 546–547 (1974).

When local official actions are contested on state and federal grounds, and particularly when construction of a state measure or local ordinance is at issue, the state questions stand at the threshold. In this case, for example, had ICS's construction of the Landmarks Ordinance prevailed, no federal constitutional question would have ripened. The Court does note that § 1367(c) "enumerat[es] the circumstances in which district courts can refuse [to] exercise [supplemental

jurisdiction]," *ante*, at 173, but as to that, the Court simply reports: "[T]he District Court decided [judicial economy, convenience, fairness, and comity] would be best served by exercising jurisdiction over ICS' state law claims," *ibid.*[5] The Court also mentions, abstractly, that "district courts may be obligated not to decide state law claims (or to stay their adjudication) where one of the abstention doctrines articulated by this Court applies." *Ante*, at 174.

Section 1367(c), which concerns supplemental jurisdiction, will have no utility in diversity cases where, if jurisdiction exists, it is generally not within the court's discretion to "decline." And lower courts have found our abstention pronouncements "less than pellucid." See R. Fallon, D. Meltzer, & D. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 1247, 1251 (4th ed. 1996). Which of our "various abstention principles," *ante*, at 174, should the lower federal courts consult when asked to review as an appellate instance, and affirm, modify, or reverse, a local license or permit denial? To dispel confusion and advance comity, should the lower courts endeavor to fashion—and will we eventually declare—a *"Chicago"* abstention doctrine?

Given the state forum to which ICS resorted, and the questions it raised there, see App. 26–35, 76–77, ICS's primary contention is clear: The Commission should have granted, *under state law*, demolition permits or an economic hardship exception. I do not comprehend the Court's reasons for suggesting that the District Court may have acted

---

[5] But cf. *Pennhurst State School and Hospital* v. *Halderman*, 465 U. S., at 122, n. 32 ("[A]llowing claims against state officials based on state law to be brought in the federal courts does not necessarily foster the policies of 'judicial economy, convenience and fairness to litigants,' *Mine Workers* v. *Gibbs*, 383 U. S. 715, 726 (1966), on which pendent jurisdiction is founded. For example, when a federal decision on state law is obtained, the federal court's construction often is uncertain and ephemeral. In cases of ongoing oversight of a state program . . . the federal intrusion is likely to be extensive. Duplication of effort, inconvenience, and uncertainty may well result.").

properly in holding on to this case, rather than allowing the state courts to proceed in their normal course.

V

In *Ankenbrandt* v. *Richards*, 504 U. S. 689 (1992), we addressed the question whether civil actions for divorce, alimony, or child custody fall within § 1332 when the parties are of diverse citizenship. Nothing in the text of the Constitution or in the words of § 1332 excluded parties from bringing such "civil actions" in federal court. Historically, however, decrees terminating marriages had been considered wholly within the State's domain. See *Barber* v. *Barber*, 21 How. 582 (1859). That understanding, we noted in *Ankenbrandt*, had prevailed "for nearly a century and a half." 504 U. S., at 694–695. "Given the long passage of time without any expression of congressional dissatisfaction," we reaffirmed the absence of statutory jurisdiction for federal court adjudication of original civil actions for divorce, alimony, and child custody. *Id.*, at 703. The Court explained that its conclusion was also

"supported by sound policy considerations. . . . [S]tate courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling [the] issues [involved]." *Id.*, at 703–704.[6]

---

[6] *Ankenbrandt* clarified and illustrated "that the domestic relations exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree"; claims of a kind traditionally adjudicated in federal courts, for example, tort or contract claims, are not excepted from federal-court jurisdiction simply because they arise in a domestic relations context. *Ankenbrandt* v. *Richards*, 504 U. S., at 704. In enacting the Violence Against Women Act of 1994, 108 Stat. 1916, 42 U. S. C. § 13931 *et seq.*, Congress reinforced *Ankenbrandt* by providing expressly that 28 U. S. C. § 1367 shall not be construed, by reason of a claim arising under the Act, "to confer on the courts of the United States jurisdiction over any State law claim seeking the establishment of a divorce, alimony, equitable distribution of marital property, or child custody decree." 42 U. S. C. § 13981(e)(4).

History and policy tug strongly here as well. There surely has been no "expression of congressional dissatisfaction" with the near-unanimous view of the Circuits that federal courts may not engage in cross-system appellate review, and "the elaboration of [state] administrative law" is a "prim[e] responsibilit[y] of the state judiciary." *Idaho* v. *Coeur d'Alene Tribe of Idaho*, 521 U. S., at 276.

This Court said in *Finley* v. *United States*, 490 U. S. 545, 547–548 (1989):

> "It remains rudimentary law that '[a]s regards all courts of the United States inferior to this tribunal, two things are necessary to create jurisdiction, whether original or appellate. The Constitution must have given to the court the capacity to take it, *and an act of Congress must have supplied it*. . . . To the extent that such action is not taken, the power lies dormant.'" (quoting *Mayor* v. *Cooper*, 6 Wall. 247, 252 (1868)).

As I see it, no Act of Congress adverts to and authorizes any cross-system appeal from state or local administrative agency to lower federal court. I would await express legislative direction before proceeding down that road. Accordingly, I would affirm the Seventh Circuit's judgment.