Justice Ginsburg,
with whom Justice Stevens, Justice O’Connor, and Justice Breyer join,
dissenting.
These cases present the question whether Congress, by enacting 28 U. S. C. § 1367, overruled this Court’s decisions in Clark v. Paul Gray, Inc., 306 U. S. 583, 589 (1939) (reaffirming the holding of Troy Bank v. G. A. Whitehead & Co., 222 U. S. 39, 40 (1911)), and Zahn v. International Paper Co., 414 U. S. 291 (1973). Clark held that, when federal-court jurisdiction is predicated on a specified amount in controversy, each plaintiff joined in the litigation must independently meet the jurisdictional amount requirement. Zahn confirmed that in class actions governed by Federal Rule of Civil Procedure 23(b)(3), “[e]ach [class member]... must satisfy the jurisdictional amount, and any [class member] who does not must be dismissed from the case.” 414 U. S., at 301.
Section 1367, all agree, was designed to overturn this Court’s decision in Finley v. United States, 490 U. S. 545 (1989). Finley concerned not diversity-of-citizenship jurisdiction (28 U. S. C. § 1332), but original federal-court jurisdiction in cases arising under federal law (28 U. S. C. § 1331). *578 The plaintiff in Finley sued the United States under the Federal Tort Claims Act (FTCA), 28 U. S; C. § 1346(b), to recover for the death of her husband and children in an airplane crash. She alleged that the Federal Aviation Administration's negligence contributed to the fatal accident. She later amended her complaint to add state-law tort claims against two other defendants, a municipality and a utility company. 490 U. S., at 546-547. No independent basis for federal subject-matter jurisdiction existed over the state-law claims. The plaintiff could not have brought her entire action in state court, because federal jurisdiction in FTCA actions is exclusive. § 1346(b). Hence, absent federal jurisdiction embracing the state-law claims, she would be obliged to pursue two discrete actions, one in federal court, the other in state court. This Court held, nevertheless, that the District Court lacked jurisdiction over the “pendent-party” state-law claims. Id., at 555-556. In so holding, the Court stressed that Congress held the control rein. Id., at 547-549. Congress could reverse the result in Finley, and permit pendent jurisdiction over state-law claims against additional defendants, if it so chose. Id., at 556. Congress did so in § 1367.
What more § 1367 wrought is an issue on which courts of appeals have sharply divided. Compare Stromberg Metal Works, Inc. v. Press Mechanical, Inc., 77 F. 3d 928, 930 (CA7 1996) (§ 1367 “supersedes Clark and allows pendent-party jurisdiction when the additional parties have claims worth less than [the jurisdictional minimum]”), and In re Abbott Labs., 51 F. 3d 524, 529 (CA5 1995) (“[U]nder § 1367 a district court can exercise supplemental jurisdiction over members of a class, although they did not meet the amount-in-controversy requirement, as did the class representatives.”), with Meritcare Inc. v. St. Paul Mercury Ins. Co., 166 F. 3d 214, 222 (CA3 1999) (§ 1367 “preserves the prohibition against aggregation outlined in [Zahn and Clark]”), and Leonhardt v. Western Sugar Co., 160 F. 3d 631, 641 (CA10 1998) (§ 1367 does not alter “the historical rules prohibiting aggregation *579 of claims, including Zahn’s prohibition of such aggregation in diversity class actions”). The Court today holds that § 1367, although prompted by Finley, a case in which original access to federal court was predicated on a federal question, notably enlarges federal diversity jurisdiction. The Court reads § 1367 to overrule Clark and Zahn, thereby allowing access to federal court by coplaintiffs or class members who do not meet the now in excess of $75,000 amount-in-controversy requirement, so long as at least one coplaintiff, or the named class representative, has a jurisdictionally sufficient claim. Ante, at 549.
The Court adopts a plausibly broad reading of § 1367, a measure that is hardly a model of the careful drafter’s art. There is another plausible reading, however, one less disruptive of our jurisprudence regarding supplemental jurisdiction. If one reads § 1367(a) to instruct, as the statute’s text suggests, that the district court must first have “original jurisdiction” over a “civil action” before supplemental jurisdiction can attach, then Clark and Zahn are preserved, and supplemental jurisdiction does not open the way for joinder of plaintiffs, or inclusion of class members, who do not independently meet the amount-in-controversy requirement. For the reasons that follow, I conclude that this narrower construction is the better reading of § 1367.
I
A
Section 1367, captioned “Supplemental jurisdiction,” codifies court-recognized doctrines formerly labeled “pendent” and “ancillary” jurisdiction. Pendent jurisdiction involved the enlargement of federal-question litigation to include related state-law claims. Ancillary jurisdiction evolved primarily to protect defending parties, or others whose rights might be adversely affected if they could not air their claims in an ongoing federal-court action. Given jurisdiction over the principal action, federal courts entertained certain mat *580 ters deemed ancillary regardless of the citizenship of the parties or the amount in controversy.
Mine Workers v. Gibbs, 883 U. S. 715 (1966), the leading pendent jurisdiction case, involved a claim against a union for wrongfully inducing the plaintiff’s discharge. The plaintiff stated a federal claim under the Taft-Hartley Act, and an allied state-law claim of unlawful conspiracy to interfere with his employment contract. This Court upheld the join-der of federal and state claims. “[T]here is power in federal courts to hear the whole,” the Court said, when the state and federal claims “derive from a common nucleus of operative fact” and are so linked that the plaintiff “would ordinarily be expected to try them all in one judicial proceeding.” Id., at 725.
Gibbs involved the linkage of federal and state claims against the same defendant. In Finley v. United States, 490 U. S. 545, the Court contained Gibbs. Without congressional authorization, the Court admonished, the pendent jurisdiction umbrella could not be stretched to cover the joinder of additional parties. Gibbs had departed from earlier decisions recognizing that “jurisdiction [must] be explicitly conferred,” the Court said. 490 U. S., at 556. Aldinger v. Howard, 427 U. S. 1 (1976), the Court observed, although resting “on a much narrower basis,” R. Fallon, D. Meltzer, & D. Shapiro, Hart and Wechsler’s The Federal Courts and the Federal System 925 (5th ed. 2003) (hereinafter Hart & Wechsler), had already signaled that “the Gibbs approach would not be extended to the pendent-party field,” Finley, 490 U. S., at 556. While the Finley Court did not “limit or impair” Gibbs itself, 490 U. S., at 556, for further development of pendent jurisdiction, the Court made it plain, the initiative would lie in Congress’ domain, id., at 555-556.[1]
*581 Ancillary jurisdiction, which evolved as a more sprawling doctrine than pendent jurisdiction, was originally rooted in “the notion that [when] federal jurisdiction in [a] principal suit effectively controls the property or fund under dispute, other claimants thereto should be allowed to intervene in order to protect their interests, without regard to jurisdiction.” Aldinger, 427 U. S., at 11; see, e. g., Freeman v. Howe, 24 How. 450 (1861). In Owen Equipment & Erection Co. v. Kroger, 437 U. S. 365 (1978), the Court addressed the permissible scope of the doctrine in relation to the liberal provisions of the Federal Rules of Civil Procedure for joinder of parties and claims.
Kroger commenced as a suit between a citizen of Iowa and a Nebraska corporation. When the Nebraska defendant im-pleaded an Iowa corporation as a third-party defendant under Rule 14(a), the plaintiff asserted state-law claims against the impleaded party. No independent basis of federal jurisdiction existed over the newly asserted claims, for both plaintiff and impleaded defendant were citizens of Iowa. 437 U. S., at 370. The Court held that the plaintiff could not draw in a co-citizen defendant in this manner. Id., at 377. Federal courts, by the time of Kroger, were routinely exercising ancillary jurisdiction over compulsory counterclaims, impleader claims, cross-claims among defendants, and claims of parties who intervened “of right.” See id., at 375, n. 18 (collecting cases). In Kroger, however,
“the nonfederal claim ... was asserted by the plaintiff, who voluntarily chose to bring suit upon a state-law claim in a federal court. By contrast, ancillary jurisdiction typically involve[d] claims by a defending party haled into court against his will, or by another person whose rights might be irretrievably lost unless he could *582 assert them in an ongoing action in a federal court.” Id., at 376.
Having “chosen the federal rather than the state forum,” the Court said, the plaintiff had to “accept its limitations.” Ibid.
In sum, in federal-question eases before §1367’s enactment, the Court recognized pendent-claim jurisdiction, Gibbs, 383 U. S., at 725, but not pendent-party jurisdiction, Finley, 490 U. S., at 555-556. As to ancillary jurisdiction, the Court adhered to the limitation that in diversity cases, throughout the litigation, all plaintiffs must remain diverse from all defendants. See Kroger, 437 U. S., at 374.
Although pendent jurisdiction and ancillary jurisdiction evolved discretely,[2] the Court has recognized that they are “two species of the same generic problem: Under what circumstances may a federal court hear and decide a state-law claim arising between citizens of the same State?” Id., at 370. Finley regarded that question as one properly addressed to Congress. See 490 U. S., at 549, 556; 13 Wright & Miller §3523, p. 127 (2d ed., Supp. 2005); Hart & Wechsler 924-926.
B
Shortly before the Court decided Finley, Congress had established the Federal Courts Study Committee to take up issues relating to “the federal courts’ congestion, delay, expense, and expansion.” Judicial Conference of the United States, Report of the Federal Courts Study Committee 3 (Apr. 2, 1990) (hereinafter Committee Report). The Committee’s charge was to conduct a study addressing the “crisis” in federal courts caused by the “rapidly growing” caseload. Id., at 6 (internal quotation marks omitted).
*583 Among recommendations, the Committee urged Congress to “authorize federal courts to assert pendent jurisdiction over parties without an independent federal jurisdictional base.” Id., at 47. If adopted, this recommendation would overrule Finley. Earlier, a Subcommittee had recommended that Congress overrule both Finley and Zahn. Report of the Subcommittee on the Role of the Federal Courts and Their Relationship to the States 547, 561, n. 33 (Mar. 12, 1990), reprinted in 1 Judicial Conference of the United States, Federal Courts Study Committee, Working Papers and Subcommittee Reports (July 1,1990) (hereinafter Subcommittee Report). In the Subcommittee’s view, “[f]rom a policy standpoint,” Zahn “ma[de] little sense.” Subcommittee Report, at 561, n. 33.[3] The full Committee, however, urged only the overruling of Finley and did not adopt the recommendation to overrule Zahn. Committee Report, at 47-48.
As a separate matter, a substantial majority of the Committee “strongly recommend[ed]” the elimination of diversity jurisdiction, save for “complex multi-state litigation, inter-pleader, and suits involving aliens.” Id., at 38-39; accord Subcommittee Report, at 454-458. “[N]o other step,” the Committee’s Report maintained, “will do anywhere nearly as much to reduce federal caseload pressures and contain the growth of the federal judiciary.” Committee Report, at 39.
Congress responded by adopting, as part of the Judicial Improvements Act of 1990, 104 Stat. 5089,[4] recommendations *584 of the Federal Courts Study Committee ranked by the House Committee on the Judiciary as “modest” and “noncontroversial.” H. R. Rep. No. 101-734, pp. 15-16 (1990) (hereinafter H. R. Rep.); see also 136 Cong. Rec. 36288 (1990). Congress did not take up the Study Committee’s immodest proposal to curtail diversity jurisdiction. It did, however, enact a supplemental jurisdiction statute, codified as 28 U. S. C. § 1367.
a

<

Section 1367, by its terms, operates only in civil actions “of which the district courts have original jurisdiction.” The “original jurisdiction” relevant here is diversity-of-citizenship jurisdiction, conferred by § 1332. The character of that jurisdiction is the essential backdrop for comprehension of § 1367.
The Constitution broadly provides for federal-court jurisdiction in controversies “between Citizens of different States.” Art. Ill, § 2, cl. 1. This Court has read that provision to demand no more than “minimal diversity,” i e., so long as one party on the plaintiffs’ side and one party on the defendants’ side are of diverse citizenship, Congress may authorize federal courts to exercise diversity jurisdiction. See State Farm Fire & Casualty Co. v. Tashire, 386 U. S. 523, 530-531 (1967). Further, the Constitution includes no amount-in-controversy limitation on the exercise of federal jurisdiction. But from the start, Congress, as its measures have been construed by this Court, has limited federal-court exercise of diversity jurisdiction in two principal ways. First, unless Congress specifies otherwise, diversity must be “complete,” i. e., all parties on plaintiffs’ side must be diverse from all parties on defendants’ side. Strawbridge v. Curtiss, 3 Cranch 267 (1806); see 13B Wright & Miller §3605 (2d ed. *585 1984). Second, each plaintiff’s stake must independently meet the amount-in-controversy specification: “When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount.” Troy Bank, 222 U. S., at 40.
The statute today governing federal-court exercise of diversity jurisdiction in the generality of cases, § 1332, like all its predecessors, incorporates both a diverse-citizenship requirement and an amount-in-controversy specification.[5] As to the latter, the statute reads: “The district courts shall have original jurisdiction [in diversity-of-citizenship cases] where the matter in controversy exceeds the sum ... of $75,000.” § 1332(a). This Court has long held that, in determining whether the amount-in-controversy requirement has been satisfied, a single plaintiff may aggregate two or more claims against a single defendant, even if the claims are unrelated. See, e. g., Edwards v. Bates County, 163 U. S. 269, 273 (1896). But in multiparty cases, including class actions, we have unyieldingly adhered to the nonaggregation *586 rule stated in Troy Bank. See Clark, 306 U. S., at 589 (reaffirming the “familiar rule that when several plaintiffs assert separate and distinct demands in a single suit, the amount involved in each separate controversy must be of the requisite amount to be within the jurisdiction of the district court, and that those amounts cannot be added together to satisfy jurisdictional requirements”); Snyder v. Harris, 394 U. S. 332, 339-340 (1969) (abandonment of the nonaggregation rule in class actions would undercut the congressional “purpose ... to check, to some degree, the rising caseload of the federal courts”).
This Court most recently addressed “[t]he meaning of [§ 1332’s] ‘matter in controversy’ language” in Zahn, 414 U. S., at 298. Zahn, like Snyder decided four years earlier, was a class action. In Snyder, no class member had a claim large enough to satisfy the jurisdictional amount. But in Zahn, the named plaintiffs had such claims. 414 U. S., at 292. Nevertheless, the Court declined to depart from its “longstanding construction of the ‘matter in controversy’ requirement of § 1332.” Id., at 301. The Zahn Court stated:
“Snyder invoked the well-established rule that each of several plaintiffs asserting separate and distinct claims must satisfy the jurisdictional-amount requirement if his claim is to survive a motion to dismiss. This rule plainly mandates not only that there may be no aggregation and that the entire case must be dismissed where none of the plaintiffs claims [meets the amount-in-eontroversy requirement] but also requires that any plaintiff without the jurisdictional amount must be dismissed from the ease, even though others allege jurisdic-tionally sufficient claims.” Id., at 300.
The rule that each plaintiff must independently satisfy the amount-in-controversy requirement, unless Congress expressly orders otherwise, was thus the solidly established *587 reading of §1332 when Congress enacted the Judicial Improvements Act of 1990, which added § 1367 to Title 28.
B
These cases present the question whether Congress abrogated the nonaggregation rule long tied to §1332 when it enacted §1367. In answering that question, “context [should provide] a crucial guide.” Rosario Ortega v. Star-Kist Foods, Inc., 370 F. 3d 124, 135 (CA1 2004). The Court should assume, as it ordinarily does, that Congress legislated against a background of law already in place and the historical development of that law. See National Archives and Records Admin. v. Favish, 541 U. S. 157, 169 (2004). Here, that background is the statutory grant of diversity jurisdiction, the amount-in-controversy condition that Congress, from the start, has tied to the grant, and the nonaggregation rule this Court has long applied to the determination of the. “matter in controversy.”
Section 1367(a) provides:
“Except as provided in subsections (b) and (e) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.”
The Court is unanimous in reading § 1367(a) to permit pendent-party jurisdiction in federal-question cases, and thus, to overrule Finley. The basic jurisdictional grant, § 1331, provides that “[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, *588 laws, or treaties of the United States.” Since 1980, § 1331 has contained no amount-in-controversy requirement. See 94 Stat. 2369 (eliminating § 133 Vs amount-in-controversy requirement). Once there is a civil action presenting a qualifying claim arising under federal law, § 1331’s sole requirement is met. District courts, we have held, may then adjudicate, additionally, state-law claims “deriving] from a common nucleus of operative fact.” Gibbs, 383 U. S., at 725. Section 1367(a) enlarges that category to include not only state-law claims against the defendant named in the federal claim, but also “[state-law] claims that involve the joinder or intervention of additional parties.”[6]
The Court divides, however, on the impact of § 1367(a) on diversity cases controlled by § 1332. Under the majority’s reading, § 1367(a) permits the joinder of related claims cut loose from the nonaggregation rule that has long attended actions under § 1332. Only the claims specified in § 1367(b)[7] would be excluded from § 1367(a)’s expansion of § 1332’s grant *589 of diversity jurisdiction. And because § 1367(b) contains no exception for joinder of plaintiffs under Rule 20 or class actions under Rule 23, the Court concludes, Clark and Zahn have been overruled.[8]
The Court’s reading is surely plausible, especially if one detaches § 1367(a) from its context and attempts no reconciliation with prior interpretations of §1332’s amount-in-controversy requirement. But § 1367(a)’s text, as the First Circuit held, can be read another way, one that would involve no rejection of Clark and Zahn.
As explained by the First Circuit in Ortega, and applied to class actions by the Tenth Circuit in Leonhardt, see supra, at 578-579, § 1367(a) addresses “civil action[s] of which the district courts have original jurisdiction,” a formulation that, in diversity cases, is sensibly read to incorporate the rules on joinder and aggregation tightly tied to § 1332 at the time of §1367’s enactment. On this reading, a complaint must first meet that “original jurisdiction” measurement. If it does not, no supplemental jurisdiction is authorized. If it does, § 1367(a) authorizes “supplemental jurisdiction” over related claims. In other words, § 1367(a) would preserve undiminished, as part and parcel of § 1332 “original jurisdiction” determinations, both the “complete diversity” rule and *590 the decisions restricting aggregation to arrive at the amount in controversy.[9] Section 1367(b)’s office, then, would be “to prevent the erosion of the complete diversity [and amount-in-controversy] requirements] that might otherwise result from an expansive application of what was once termed the doctrine of ancillary jurisdiction.” See Pfander, Supplemental Jurisdiction and Section 1367: The Case for a Sympathetic Textualism, 148 U. Pa. L. Rev. 109, 114 (1999); infra, at 593-594. In contrast to the Court’s construction of § 1367, which draws a sharp line between the diversity and amount-in-controversy components of §1332, see ante, at 554; supra, at 585, n. 5, the interpretation presented here does not sever the two jurisdictional requirements.
The more restrained reading of § 1367 just outlined would yield affirmance of the First Circuit’s judgment in Ortega, and reversal of the Eleventh Circuit’s judgment in Exxon. It would not discard entirely, as the Court does, the judicially developed doctrines of pendent and ancillary jurisdiction as they existed when Finley was decided.[10] Instead, it would recognize §1367 essentially as a codification of those doctrines, placing them under a single heading, but largely retaining their substance, with overriding Finley the only basic change: Supplemental jurisdiction, once the district court has original jurisdiction, would now include “claims that involve the joinder or intervention of additional parties.” § 1367(a).
Pendent jurisdiction, as earlier explained, see supra, at 579-580, applied only in federal-question cases and allowed *591 plaintiffs to attach nonfederal claims to their jurisdiction-qualifying claims. Ancillary jurisdiction applied primarily, although not exclusively, in diversity cases and “typically involved] claims by a defending party haled into court against his will.” Kroger, 437 U. S., at 376 (emphasis added); see also id., at 375, n. 18; supra, at 581-582. As the First Circuit observed, neither doctrine permitted a plaintiff to circumvent the dual requirements of § 1332 (diversity of citizenship and amount in controversy) “simply by joining her [jurisdic-tionally inadequate] claim in an action brought by [a] jurisdictionally competent diversity plaintiff.” Ortega, 370 F. 3d, at 138.
Not only would the reading I find persuasive “alig[n] statutory supplemental jurisdiction with the judicially developed doctrines of pendent and ancillary jurisdiction,” ibid., it would also synchronize § 1367 with the removal statute, 28 U. S. C. § 1441. As the First Circuit carefully explained:
“Section 1441, like § 1367, applies only if the ‘civil action’ in question is one ‘of which the district courts .. . have original jurisdiction.’ § 1441(a). Relying on that language, the Supreme Court has interpreted § 1441 to prohibit removal unless the entire action, as it stands at the time of removal, could have been filed in federal court in the first instance. See, e. g., Syngenta Crop Protection, Inc. v. Henson, 537 U. S. 28, 33 (2002); Okla. Tax Comn'n v. Graham, 489 U. S. 838, 840 (1989) (per curiam). Section 1441 has thus been held to incorporate the well-pleaded complaint rule, see City of Chicago [v. International College of Surgeons, 522 U. S. 156, 163 (1997)];[11] the complete diversity rule, see Caterpillar, *592 Inc. v. Lewis, 519 U. S. 61, 73 (1996); and rules for calculating the amount in controversy, see St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U. S. 283, 291-292 (1938).” 370 F. 3d, at 138 (citations omitted and footnote added).
The less disruptive view I take of § 1367 also accounts for the omission of Rule 20 plaintiffs and Rule 23 class actions in § 1367(b)’s text. If one reads § 1367(a) as a plenary grant of supplemental jurisdiction to federal courts sitting in diversity, one would indeed look for exceptions in § 1367(b). Finding none for permissive joinder of parties or class actions, one would conclude that Congress effectively, even if unintentionally, overruled Clark and Zahn. But if one recognizes that the nonaggregation rule delineated in Clark and Zahn forms part of the determination whether “original jurisdiction” exists in a diversity case, see supra, at 590, then plaintiffs who do not meet the amount-in-controversy requirement would fail at the § 1367(a) threshold. Congress would have no reason to resort to a § 1367(b) exception to turn such plaintiffs away from federal court, given that their claims, from the start, would fall outside the court’s § 1332 jurisdiction. See Pfander, supra, at 148.
Nor does the more moderate reading assign different meanings to “original jurisdiction” in diversity and federal-question cases. See ante, at 561. As the First Circuit stated:
“ ‘[OJriginal jurisdiction’ in § 1367(a) has the same meaning in every case: [An] underlying statutory grant of original jurisdiction must be satisfied. What differs be *593 tween federal question and diversity cases is not the meaning of ‘original jurisdiction’ but rather the [discrete] requirements of sections 1331 and 1332. Under § 1331, the sole issue is whether a federal question appears on the face of the plaintiffs well-pleaded complaint; the [citizenship] of the parties and the amounts they stand to recover [do not bear on that determination]. Section 1332, by contrast, predicates original jurisdiction on the identity of the parties (1 e., [their] complete diversity) and their [satisfaction of the amount-in-controversy specification]. [In short,] the ‘original jurisdiction’ language in § 1367 operates differently in federal-question and diversity cases not because the meaning of that term varies, but because the [jurisdiction-granting] statutes are different.” 370 F. 3d, at 139-140.
What is the utility of § 1367(b) under my reading of § 1367(a)? Section 1367(a) allows parties other than the plaintiff to assert reactive claims once entertained under the heading ancillary jurisdiction. See supra, at 581 (listing claims, including compulsory counterclaims and impleader claims, over which federal courts routinely exercised ancillary jurisdiction). As earlier observed, see supra, at 590-591, § 1367(b) stops plaintiffs from circumventing § 1332’s jurisdictional requirements by using another’s claim as a hook to add a claim that the plaintiff could not have brought in the first instance. Kroger is the paradigm case. See supra, at 581-582. There, the Court held that ancillary jurisdiction did not extend to a plaintiff’s claim against a nondiverse party who had been impleaded by the defendant under Rule 14. Section 1367(b), then, is corroborative of § 1367(a)’s coverage of claims formerly called ancillary, but provides exceptions to ensure that accommodation of added claims would not fundamentally alter “the jurisdictional requirements of section 1332.” See Pfander, 148 U. Pa. L. Rev., at 135-137.
*594 While §1367’s enigmatic text[12] defies flawless interpretation, see supra, at 589, n. 8,[13] the precedent-preservative reading, I am persuaded, better accords with the historical and legal context of Congress’ enactment of the supplemental jurisdiction statute, see supra, at 582-584, 587, and the established limits on pendent and ancillary jurisdiction, see supra, at 580-582. It does not attribute to Congress a jurisdictional enlargement broader than the one to which the legislators adverted, cf. Finley, 490 U. S., at 549, and it follows the sound counsel that “close questions of [statutory] construction should be resolved in favor of continuity and *595 against change,” Shapiro, Continuity and Change in Statutory Interpretation, 67 N. Y. U. L. Rev. 921, 925 (1992).[14]
* * *
For the reasons stated, I would hold that § 1367 does not overrule Clark and Zahn. I would therefore affirm the judgment of the Court of Appeals for the First Circuit and reverse the judgment of the Court of Appeals for the Eleventh Circuit.

 “[B]oth the Finley result and its implications” sparked “considerable criticism.” Hart & Wechsler 926; see also 13B C. Wright, A. Miller, E. Cooper, & R. Freer, Federal Practice and Procedure § 3567.2, p. 91 (2d *581 ed., Supp. 2005) (hereinafter Wright & Miller) (characterizing the Finley decision as “surprising”).

 See generally 13B Wright & Miller §§3567, 3567.1, 3567.2 (2d ed. 1984) (discussing pendent jurisdiction); 13 id., § 3523 (discussing ancillary jurisdiction); Hart & Wechsler 922-926 (discussing pendent jurisdiction); id., at 1488-1490 (discussing ancillary jurisdiction).

 Anomalously, in holding that each class member “must satisfy the jurisdictional amount,” Zahn v. International Paper Co., 414 U. S. 291, 301 (1973), the Zahn Court did not refer to Supreme Tribe of Ben-Hur v. Cauble, 255 U. S. 356, 366 (1921), which established that in a class action, the citizenship of the named plaintiff is controlling. But see Zahn, 414 U. S., at 309-310 (Brennan, J., dissenting) (urging Zahn’s inconsistency with Ben-Hur).

 The omnibus Act encompassed the Civil Justice Reform Act of 1990 (Title I), the creation of new judgeships (Title II), the Federal Courts Study Committee Implementation Act of 1990 (Title III), and the estab *584 lishment of the National Commission on Judicial Discipline and Removal (Title IV).

 Endeavoring to preserve the “complete diversity” rule first stated in Strawbridge v. Curtiss, 3 Cranch 267 (1806), the Court’s opinion drives a wedge between the two components of 28 U. S. C. § 1332, treating the diversity-of-citizenship requirement as essential, the amount-in-controversy requirement as more readily disposable. See ante, at 553, 562. Section 1332 itself, however, does not rank order the two requirements. What “[o]rdinary principle] of statutory construction” or “sound canon of interpretation,” ante, at 558, allows the Court to slice up § 1332 this way? In partial explanation, the Court asserts that amount in controversy can be analyzed claim by claim, but the diversity requirement cannot. See ante, at 554. It is not altogether clear why that should be so. The cure for improper joinder of a nondiverse party is the same as the cure for improper joinder of a plaintiff who does not satisfy the jurisdictional amount. In both cases, original jurisdiction can be preserved by dismissing the nonqualifying party. See Caterpillar Inc. v. Lewis, 519 U. S. 61, 64 (1996) (diversity); Newman-Green, Inc. v. Alfonzo-Larrain, 490 U. S. 826, 836-838 (1989) (same); Zahn, 414 U. S., at 295, 300 (amount in controversy); Clark v. Paul Gray, Inc., 306 U. S. 583, 590 (1939) (same).

 The Court noted in Zahn, 414 U. S., at 302, n. 11, that when the exercise of § 1331 federal-question jurisdiction and § 1332 diversity jurisdiction were conditioned on the same jurisdictional-amount limitation, the same nonaggregation rule applied under both heads of federal jurisdiction. But cf. ante, at 562. The Court added, however, that “Congress ha[d] exempted major areas of federal-question jurisdiction from any jurisdictional-amount requirements,” thus diminishing the impact of § 1331’s “matter in controversy” specification in cases arising under federal law. Zahn, 414 U. S., at 302, n. 11.

 Title 28 U. S. C. § 1367(b) provides:
“In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14,19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.”

 Under the Court’s construction of §1367, see ante, at 560, 566-567, Beatriz Ortega’s family members can remain in the action because their joinder is merely permissive, see Fed. Rule Civ. Proc. 20. If, however,' their presence was “needed for just adjudication,” Rule 19, their dismissal would be required. The inclusion of those who may join, and exclusion of those who should or must join, defies rational explanation, but cf. ante, at 565, and others adopting the interpretation the Court embraces have so acknowledged, see Stromberg Metal Works, Inc. v. Press Mechanical, Inc., 77 F. 3d 928, 932 (CA7 1996) (recognizing the anomaly and inquiring: “What sense can this make?”); cf. 14B Wright & Miller §3704, p. 168 (3d ed. 1998) (distinction between Rule 19 and Rule 20 “seems incongruous, and serves no apparent public policy purpose”).

 On this reading of § 1367(a), it is immaterial that § 1367(b) “does not withdraw supplemental jurisdiction over the claims of the additional parties at issue here.” Ante, at 560. Because those claims would not come within § 1367(a) in the first place, Congress would have had no reason to list them in § 1367(b). See infra, at 592-593.

 The Court’s opinion blends the two doctrines, according no significance to their discrete development. See ante, at 552-557.

 The point of the Court’s extended discussion of Chicago v. International College of Surgeons, 522 U. S. 156 (1997), in the instant cases, see ante, at 562-564, slips from my grasp. There was no disagreement in that case, and there is none now, that 28 U. S. C. § 1367(a) is properly read to authorise the exercise of supplemental jurisdiction in removed *592 cases. International College of Surgeons was unusual in that the federal court there was asked to review a decision of a local administrative agency. Such review, it was unsuccessfully argued, was “appellate” in character, and therefore outside the ken of a court empowered to exercise “original” jurisdiction. Compare 522 U. S., at 166-168, with id., at 176-177 (Ginsburg, J, dissenting).

 The Court notes the passage this year of the Class Action Fairness Act (CAFA), Pub. L. 109-2, 119 Stat. 4, ante, at 571-572, only to dismiss that legislation as irrelevant. Subject to several exceptions and qualifications, CAFA provides for federal-court adjudication of state-law-based class actions in which diversity is “minimal” (one plaintiff’s diversity from one defendant suffices), and the “matter in controversy” is an aggregate amount in excess of $5,000,000. Significant here, CAFA’s enlargement of federal-court diversity jurisdiction was accomplished, “clearly and conspicuously,” by amending § 1332. Cf. Rosario Ortega v. Star-Kist Foods, Inc., 370 F. 3d 124, 142 (CA1 2004).

 If § 1367(a) itself renders unnecessary the listing of Rule 20 plaintiffs and Rule 23 class actions in § 1367(b), see supra, at 592, then it is similarly unnecessary to refer, as § 1367(b) does, to “persons proposed to be joined as plaintiffs under Rule 19.” On one account, Congress bracketed such persons with persons “seeking to intervene as plaintiffs under Rule 24” to modify pre-§1367 practice. Before enactment of §1367, courts entertained, under the heading ancillary jurisdiction, claims of Rule 24(a) intervenors “of right,” see Owen Equipment & Erection Co. v. Kroger, 437 U. S. 365, 375, n. 18 (1978), but denied ancillary jurisdiction over claims of “necessary” Rule 19 plaintiffs, see 13 Wright & Miller §3523, p. 127 (2d ed., Supp. 2005). Congress may have sought simply to underscore that those seeking to join as plaintiffs, whether under Rule 19 or Rule 24, should be treated alike, i. e., denied joinder when “inconsistent with the jurisdictional requirements of section 1332.” See 370 F. 3d, at 140, and n. 15 (internal quotation marks omitted); H. R. Rep., at 29 (“Subsection (b) makes one small change in pre-Finley practice,” i. e., it eliminates the Rule 19/Rule 24 anomaly.).

 While the interpretation of §1367 described in this opinion does not rely on the measure’s legislative history, that history, as Justice Stevens has shown, see ante, at 573 (dissenting opinion), is corroborative of the statutory reading set out above.