**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 12, 2023**

# In the Court of Appeals of Georgia

A23A0779. ECBI WARNER, LLC v. PATRICK et al.

BROWN, Judge.

A2D, Inc., and eCBI Warner, LLC ("Plaintiffs"), filed various claims against the City of Warner Robins as well as its mayor and city council members ("the City defendants"), in the Superior Court of Houston County, stemming from the installation of a fiber optic wide area network in Warner Robins. The City defendants moved for summary judgment, asserting that Plaintiffs' claims are barred by res judicata because Plaintiffs previously had filed and dismissed a similar lawsuit in federal court. The trial court granted the motion for summary judgment and Plaintiffs appeal. For the reasons explained below, we affirm in part and reverse in part.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). On

appeal from the grant of a motion for summary judgment, we conduct a de novo review of the law, viewing the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Salem Crossing Townhomes Homeowners Assn. v. Wagner*, 347 Ga. App. 621 (820 SE2d 453) (2018). Viewed in the light most favorable to Plaintiffs, the nonmovants, the record shows that in 2017, Plaintiffs and the City defendants entered into an agreement for the creation of a 25-mile fiber optic wide area network consisting of two components: (1) the governmental wide area network ("the government WAN") and (2) the private use wide area network ("the private WAN"). The government WAN would be exclusively used by the City of Warner Robins and would consist of six to twelve physical fiber lines, network equipment, and a network operations center connecting City Hall with City agencies, departments, and facilities. The private use WAN would be operated by Plaintiffs as a "for-profit business that provides 'wholesale' services. . . ." The agreement further provided that upon completion, Plaintiffs would sell the government WAN to the City for $2.5 million, and the private WAN to the City's Development Authority for $100,000. The Development Authority agreed to lease the private WAN back to eCBI Warner, LLC.

2

According to Plaintiffs, 72 fiber optic lines were installed; the City and the Development Authority each bought 12 lines. The Development Authority leased its 12 lines back to eCBI Warner, LLC, for a period of 99 years. A dispute arose over the remaining 48 fiber optic lines — lines seemingly not addressed by the parties' agreement. Plaintiffs sought permits to access the lines and when the permits were not issued, Plaintiffs filed a petition for a writ of mandamus against the City defendants in the Superior Court of Houston County in October 2020. According to Plaintiffs' petition, they have to "obtain right of way access permits from . . . [the] City" in order to "access their fiber and conduit assets in the public [right of way]" and "install new fiber and conduit assets in the public [right of way] to end-user customers."[1]

In April 2021, Plaintiffs filed a second lawsuit against the City defendants in federal court,[2] alleging that they violated

> Plaintiffs' rights under the First, Fifth, and Fourteenth Amendments of
> the United States Constitution and their rights secured by Georgia law
> . . . by unjustly, arbitrarily, and capriciously refusing to issue right-of-

[1] As of the filing of Plaintiffs' petition, they had filed six applications, and the City had not approved or denied any. According to Plaintiffs' later filings, the City had issued four permits.

[2] In addition to A2D, Inc. and eCBI Warner, LLC, the federal lawsuit was brought by individual officers of the two entities.

3

way permits to Plaintiffs on city property so that Plaintiffs could access and utilize the personal property owned by eCBI consisting of in-ground conduit containing forty-eight (48) fiber optic fibers . . . [and] by publishing unequivocally untrue . . . and misleading statements with the specific intent to damage [Plaintiffs'] reputations solely predicated upon racial prejudice and animus[.]

Plaintiffs alleged, inter alia, property rights violations based on the taking of the fiber optic lines and conduit without due process by "arbitrarily and capriciously refusing to issue permits to Plaintiffs"; economic rights violations based on the frustration of Plaintiffs' ability to enter contracts to use the fiber optic lines and conduit by advising others "not to do business with [Plaintiffs]"; a state law conversion claim based on Plaintiffs' statutorily protected right to use and access the fibers and conduit and the City defendants' intent to deprive Plaintiffs of their property by confiscating all 72 of the fiber lines and refusing to issue right of way permits to Plaintiffs. In August 2021, the Development Authority was dissolved by resolution of the Warner Robins mayor and city council.

Plaintiffs dismissed with prejudice their claims against the individual defendants in federal court, as reflected in a May 2, 2022 order. On the following day, Plaintiffs voluntarily dismissed all remaining claims with prejudice. Two months

later, on July 5, 2022, the City terminated the lease agreement between the Development Authority and eCBI Warner, LLC, for the private WAN.

In July 2022, the City defendants moved for summary judgment in superior court, contending that Plaintiffs' claims were barred by res judicata following the voluntary dismissal with prejudice in federal court. One month later, Plaintiffs amended their complaint to include facts/claims based on the July 2022 termination of the lease, ultimately seeking appointment of a receiver, a permanent injunction, and a writ of mandamus and asserting claims for inverse condemnation, breach of contract, nuisance, and expenses of litigation pursuant to OCGA §§ 13-6-11 and 9-15-14.[3] Following a hearing in September 2022, the trial court granted summary judgment in favor of the City defendants, concluding that all of Plaintiffs' claims are barred by res judicata. Plaintiffs now appeal.

*Analysis*

At the outset, we note that

[t]he preclusive effect in state court of a federal court judgment . . . is determined by federal common law. If the federal decision was rendered under the court's federal question jurisdiction, the uniform federal rules

---

[3] Between 2021 and 2022, Plaintiffs filed four amended complaints in superior court.

of preclusion declared by the United States Supreme Court are applied. If the federal decision was rendered under diversity jurisdiction, however, federal common law looks to the law of the state where the district court sits to determine the preclusive effect of the case, unless such state law is incompatible with federal interests in the case.

(Citations omitted.) *Ames v. JP Morgan Chase Bank, N.A.*, 298 Ga. 732, 736 (2) (783 SE2d 614) (2016). See also *Taylor v. Sturgell*, 553 U. S. 880, 891 (II) (128 SCt 2161, 171 LE2d 155) (2008). Here, Plaintiffs filed their suit in federal court invoking the court's federal question jurisdiction. Accordingly, we must look to the federal rules of preclusion.

The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as "res judicata." Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim. By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, these two doctrines protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions.

6

(Citations, punctuation and footnote omitted.) *Taylor*, 553 U. S. at 892 (II) (A). "The party asserting res judicata bears the burden of showing that the later-filed suit is barred." *Batchelor-Robjohns v. United States*, 788 F3d 1280, 1285 (III) (A) (11th Cir. 2015).[4] For res judicata to apply, four elements must exist: (1) a final judgment on the merits; (2) rendered by a court of competent jurisdiction; (3) identical parties (or their privies) in both actions, and (4) the same cause of action is involved in both cases. *Maldonado v. United States Attorney General*, 664 F3d 1369, 1375 (III) (11th Cir. 2011).

Plaintiffs contend that three of the four elements of res judicata are not satisfied in this case: (1) a final judgment on the merits; (2) rendered by a court of competent

---

[4] While preclusion law often refers to a judgment barring a "later-filed suit," "it is immaterial whether the action in which the judgment is interposed as an estoppel was commenced before or after the action in which the adjudication was made." *Darling Stores Corp. v. Beatus*, 199 Ga. 215 (4) (33 SE2d 701) (1945). Where, as here, "two actions involving the same issue are pending at the same time, it is not the final judgment in the first suit, but the first final judgment, although it may be rendered in the second suit, that renders the issue res judicata in the other court." George Blum, 30 American Jurisprudence 2d, Executions, § 635. See *Chicago, Rock Island & Pacific R. Co. v. Schendel*, 270 U. S. 611, 615 (1) (46 SCt 420, 70 LEd 757) (1926) ("Nor is it material that the action or proceeding, in which the judgment, set up as an estoppel, is rendered, was brought after the commencement of the action or proceeding in which it is pleaded.").

7

jurisdiction; and (3) same cause of action. We will address each of the requirements in turn.

(a) *Final Judgment on the Merits.* As to the first element, "dismissal of a complaint with prejudice satisfies the requirement that there be a final judgment on the merits. The phrases 'with prejudice' and 'on the merits' are synonymous terms, both of which invoke the doctrine of claim preclusion." *Citibank, N.A. v. Data Lease Financial Corp.*, 904 F2d 1498, 1501 (11th Cir. 1990). See also *Norfolk Southern Corp. v. Chevron, U.S.A.*, 371 F3d 1285, 1288 (11th Cir. 2004). Thus, Plaintiffs' voluntary dismissal with prejudice of their claims operated as a final judgment on the merits for purposes of claim preclusion.[5] See *Jackson v. Dow Chemical Co.*, 518 Fed. Appx. 99, 102 (3d Cir. 2013); *Citibank*, 904 F2d at 1501.

(b) *Court of Competent Jurisdiction.* "[T]he general rule against splitting causes of action does not apply when suit is brought in a court that does not have

---

[5] Based on *Holly v. South*, 250 Ga. App. 342, 344 (553 SE2d 159) (2001), Plaintiffs assert that there was no final adjudication on the merits. However, that case's holding narrowly applies "when an order granting summary judgment in a prior suit is relied on for res judicata purposes" and examination of the underlying basis of summary judgment shows it was not an adjudication on the merits. Id. at 344. See also *Fowler v. Vineyard*, 261 Ga. 454, 456 (2) (405 SE2d 678) (1991) (under Georgia law, a voluntary dismissal with prejudice but without order of court should act as res judicata).

jurisdiction over all of a plaintiff's claims." (Citation and punctuation omitted.) *Borrero v. United Healthcare of New York*, 610 F3d 1296, 1307 (III) (B) (1) (11th Cir. 2010). Plaintiffs assert that the federal court did not have jurisdiction over their state law claims. Conversely, the City defendants argue that the district court could have exercised pendent, or supplemental, jurisdiction over Plaintiffs' state law claims.

(i) As to Plaintiffs' claim for a writ of mandamus, we agree with Plaintiffs. "Federal district courts do not have the authority to issue writs of mandamus to direct state officials in the performance of their duties." *Church of Scientology of Ga. v. City of Sandy Springs*, 843 FSupp.2d 1328, 1380 (IV) (E) (N.D. Ga. 2012), citing 28 U.S.C. § 1361. It follows that Plaintiffs' claim for a writ of mandamus is not barred and the superior court erred in granting summary judgment to the City defendants on this claim.

(ii) However, we agree with the City defendants that the federal court could have exercised supplemental jurisdiction over any remaining state law claims that had accrued. "It is well settled that where a party fails to present a state law claim in federal court, a later suit in the state courts will be barred if the state claim could have been litigated in the federal court under its pendent jurisdiction." (Citation and punctuation.) *Neely v. City of Riverdale*, 298 Ga. App. 884, 887 (2) (681 SE2d 677)

9

(2009) (for purposes of res judicata, plaintiff's breach of contract claim could have been brought pursuant to federal district court's pendent jurisdiction in plaintiff's federal discrimination suit). See also *City of Chicago v. Intl. College of Surgeons*, 522 U. S. 156, 164-165 (118 SCt 523, 139 LE2d 525) (1997) ("this Court has long adhered to principles of pendent and ancillary jurisdiction by which the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims").

We do not find Plaintiffs' reliance on *Pope v. City of Atlanta*, 240 Ga. 177 (240 SE2d 241) (1977), persuasive. In that case, the plaintiff brought suit in the federal district court claiming the Metropolitan River Protection Act was unconstitutional on federal grounds. Id. at 178. After the federal action was dismissed, the plaintiff brought suit in the state court asserting the state constitutional grounds that the Act violated her state due process and eminent domain rights. Id. Ultimately, the Supreme Court held that res judicata did not bar the plaintiff's claims, concluding that the "important state issues" in the case "'substantially predominate[d]' and would most likely have been left for state resolution had they been presented to the federal court." Id. at 178-180 (1). Central to the holding in that case was the Court's observation that "[q]uestions of the construction of the State Constitution are strictly matters for the

highest court of this State," id. at 178 (1), and that the underlying purposes of the res judicata rule would be advanced rather than defeated by not applying the rule:

> The statute [at issue] governs a matter of great public importance . . . [and the] issue has not been decided by the state courts. If the res judicata bar is applied the defendant will likely be sued again on the same issue by another person. . . . In that event both the courts and the defendant must suffer the same procedural requirements and hearings as here, as well as the attendant delay, until the issue is again ripe for decision. A decision now will preclude further litigation.

Id. at 180 (1).

The case at hand does not raise any "[q]uestions of the construction of the State Constitution" likely to be raised again. And, we cannot say that the underlying purposes of the res judicata rule would be advanced rather than defeated by not applying the rule. Id. at 179-180 (1) ("We emphasize that the rule announced here applies only to federal pendent jurisdiction . . . [and] the court must be convinced that the underlying purposes of the res judicata rule are advanced rather than defeated by not applying the rule.").

(c) *Identity of the Parties.* "[I]n order for the doctrine of res judicata to preclude re-litigation of claims, the parties in the first action must be identical, or in privity with the parties in the second action. Or, the parties in the second action must have

11

had sufficient identity of interests with a party so that the party may be treated as a party for preclusion purposes." (Citation, punctuation and emphasis omitted.) *Clark v. Clark*, 969 FSupp. 1319, 1325 (III) (S.D. Ga. 1997). "Privity is a flexible legal term, comprising several different types of relationships and generally applying when a person, although not a party, has his interests adequately represented by someone with the same interests who is a party." (Citation and punctuation omitted.) *Access for Disabled, Inc. v. Fort Lauderdale Hospitality*, 826 FSupp.2d 1330, 1335 (III) (1) (S.D. Fla. 2011). Here, both actions involve Plaintiffs and the City of Warner Robins, as well as its mayor and city council members. The fact that the federal action involved additional plaintiffs and an additional defendant matters not. See *Highwood Towers, LLC v. Fayette County*, No. 3:11-CV-172-TCB, 2013 WL 12470857, at *6 (II) (B) (2) (b) (N.D. Ga. Aug. 1, 2013) (fact that there were additional parties in the state court action did not bar defendants from asserting res judicata in the federal action). Finally, although the identity of the mayor and some city council members changed between dismissal of the federal action and the grant of summary judgment in superior court, the new mayor and city council members were privies to the federal action for collateral estoppel purposes. See *Mann v. Palmer*, 713 F3d 1306, 1311 (II) (A) (11th Cir. 2013) (because plaintiff's new complaint was against the Warden and

Secretary of the Department of Corrections in their official capacities, and his earlier complaint also named the Warden and Secretary of the Department of Corrections in their official capacities, although different individuals, there is identity of the parties).

(d) *Same Cause of Action*. "Although a judgment is only conclusive regarding the matters that the parties might have litigated, for res judicata purposes, claims that could have been brought are claims in existence at the time the original complaint was filed." (Citation and punctuation omitted.) *Shurick v. Boeing Co.*, 623 F3d 1114, 1118 (II) (11th Cir. 2010).

> In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form. It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same "claim" or "cause of action" for purposes of res judicata.

(Citation and punctuation omitted.) *In re Piper Aircraft Corp.*, 244 F3d 1289, 1297 (III) (B) (11th Cir. 2001). Plaintiffs contend that their claims in superior court are distinct from those filed in federal court and further that some of their claims did not arise until the City terminated the lease agreement in July 2022, two months after Plaintiffs dismissed their claims in federal court.

13

It is true that "[c]laim preclusion generally does not bar claims that are predicated on events that postdate the filing of the initial complaint." (Citation and punctuation omitted.) *Lucky Brand Dungarees v. Marcel Fashions Group*, ___ U. S. ___ (II) (B) (206 LE2d 893, 140 SCt 1589) (2020). "[R]es judicata does not bar a claim that was not in existence at the time of the original action unless the facts underlying the claim were actually raised in that action." (Citation and punctuation omitted.) *Singh v. United States Attorney General*, 561 F3d 1275, 1280 (II) (11th Cir. 2009). This requirement "avoids the potentially unworkable requirement that every claim arising prior to entry of a final decree must be brought into the pending litigation or lost." (Citation and punctuation omitted.) *Manning v. City of Auburn*, 953 F2d 1355, 1360 (11th Cir. 1992).

(i) While the Development Authority was dissolved prior to the dismissal of Plaintiffs' claims in federal court, Plaintiffs' lease with the Authority for the 12 fiber lines comprising the private WAN was not terminated until *after* the dismissal.[6] Thus, Plaintiffs' claims relating to the wrongful termination of the lease agreement or to the

---

[6] The City defendants point out that the Development Authority was dissolved during the pendency of the federal suit, and any claims related to the termination of the lease already arose on dissolution of the Authority. But, the City defendants also assert that upon dissolution, any lease rights of the Authority reverted to the City of Warner Robins, implying that the lease was still operative.

breach of the agreement between the parties as it pertains to the 12 fiber lines comprising the private WAN did not arise until after the dismissal. See *Manning*, 953 F2d at 1359 ("Res judicata is no defense where, between the first and second suits, there has been a modification of significant facts creating new legal conditions.") (citation and punctuation omitted).

(ii) As to Plaintiffs' claims relating to the 48 fiber lines — those not part of either the government or private WAN — we conclude that they arise out of the same nucleus of operative facts as those previously asserted in the federal suit, involved the same rights as those at issue in the earlier action, and are similar claims to those previously adjudicated. The complaints in both cases contain nearly identical factual allegations concerning Plaintiffs' attempts to access the 48 fiber lines. In both complaints/actions, Plaintiffs assert rights to the remaining 48 fiber lines and damages flowing from the City defendants' interference with those rights, including the City defendants' failure to issue right of way permits. "Because the underlying core of facts is the same in both cases, [Plaintiffs] could have effectively litigated [their] new or altered [state court] claims with [their] claims in [the first action]." *Solis v. Global Acceptance Credit Co.*, 601 Fed. Appx. 767, 771 (III) (11th Cir. 2015). See also

*Bradley v. Ga. Institute of Technology*, 228 Ga. App. 216, 218 (1) (a) (491 SE2d 453) (1997) (same).

This Court reached a similar conclusion given a similar set of facts in *Neely*, supra. In that case, the plaintiff filed a federal civil rights action in 2005, alleging racial and gender discrimination and retaliation against the city and various city employees based on their failure to promote him to various positions in 2004. 298 Ga. App. at 886 (2). After the federal district court granted summary judgment in favor of the defendants, the plaintiff filed a complaint against the city in state court alleging that it failed to promote him to various positions in 2004, 2005, and 2006, in violation of personnel policies and procedures. Id. at 885-886. We held that the plaintiff's breach of contract claims regarding the failure to promote him in 2004 could have been litigated in his prior federal action, arose out of a common nucleus of operative fact, and thus were barred by res judicata. Id. at 887 (2). We concluded that the plaintiff's claims based on the failure to promote him in 2005 and 2006, *after* he had filed the federal action, were not barred as the city had not "affirmatively establish[ed] that [the plaintiff] could have raised these claims, which are based on separate events, in the federal case." Id. at 887-888 (2).

(iii) In sum, res judicata does not bar any claims arising from or relating to the termination of the lease between eCBI Warner, LLC and the Development Authority for the 12 fiber lines comprising the private WAN. Nor does it bar Plaintiffs' claim for a writ of mandamus, whether it pertains to the private WAN fiber lines or the 48 fiber lines. Plaintiffs' remaining claims, however, are barred;[7] Plaintiffs are precluded from asserting any remaining claims concerning the 48 fiber lines.

*Judgment affirmed in part and reversed in part. McFadden, P. J., and Markle, J., concur.*

---

[7] Due to the nature of Plaintiffs' complaint, some of Plaintiffs' claims may implicate both the private WAN fibers and the 48 fibers not part of either the private or governmental WAN. For instance, Plaintiffs summarily allege that the City breached various agreements relating to all of the fibers. To the extent, Plaintiffs assert a cause of action based on the latter, it is barred.

17

ON MOTION FOR RECONSIDERATION

Plaintiffs have filed a motion for reconsideration of Division (b) (ii) of our opinion, asserting that we "missed 28 USC § 1367 [setting forth the] doctrine of supplemental jurisdiction [which] superseded the traditional doctrine of pendent jurisdiction years ago."[8] (Punctuation omitted.) According to Plaintiffs, under the supplemental jurisdiction statute, district courts can decline to exercise jurisdiction over such state law claims, and Eleventh Circuit precedent "'strongly encourages or even requires' that the district court decline jurisdiction" in a case such as this. Thus, Plaintiffs maintain that the district court would have declined jurisdiction over their state law claims had they been brought in the federal action because the state law claims "substantially predominate" over the federal claims under 28 USC § 1367 (c)

[8] Congress codified the principles of pendent jurisdiction in the supplemental jurisdiction statute, 28 USC § 1367. See *City of Chicago v. Intl. College of Surgeons*, 522 U. S. 156, 165 (II) (A) (118 SCt 523, 139 LE2d 525) (1997). Some federal courts have since used the terms interchangeably. See, e.g., id.; *Rodriguez v. Doral Mtg. Corp.*, 57 F3d 1168, 1175 (III) (B), n.8 (1st Cir. 1995) ("'[s]upplemental jurisdiction' is the currently fashionable term, embraced by Congress in drafting 28 USC § 1367, that now blankets both 'pendent jurisdiction' and . . . 'ancillary jurisdiction' . . . we opt for a middle course and use the terms 'supplemental jurisdiction' and 'pendent jurisdiction' interchangeably"). Thus, while our opinion, at times, refers to "pendent jurisdiction," it is, in substance, the same principle as the more current term, "supplemental jurisdiction."

18

(2), and because the district court was poised to dismiss Plaintiffs' claims prior to Plaintiffs' voluntary dismissal, see 28 USC § 1367 (c) (3).[9]

That the district court had the discretion to decline to hear the state law claims is not synonymous with the district court lacking jurisdiction or authority to hear the state law claims. See *Acri v. Varian Assocs.*, 114 F3d 999, 1000 (9th Cir. 1997) ("[A] federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in § 1367 (c) — as it has always had[.] That state law claims 'should' be dismissed if federal claims are dismissed before trial . . . has never meant that they *must* be dismissed.") (citations omitted; emphasis in original). As the Seventh Circuit summed up in *Harper Plastics v. Amoco Chem. Corp.*, 657 F2d 939 (7th Cir. 1981),

---

[9] 28 USC § 1367 (c) provides, in its entirety, as follows:
> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if —
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

19

[t]he uncertainty over whether a trial judge would exercise pendent jurisdiction does not justify permitting the institution of a multiplicity of proceedings which may have the effect of harassing defendants and wasting judicial resources. If appellant entertained any doubts at the pleading stage, they should have been resolved in favor of joinder.

A dismissal of the claims for relief under federal law in a complaint to which pendent state claims have been joined does not of itself end the litigation. If it appears that the state issues predominate, whether in terms of proof, of the scope of issues raised, or the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals. Conversely, if the district judge finds that the federal claims are insubstantial, the entire action may be dismissed and the plaintiff will be permitted to pursue the common law claims in a state tribunal. Id. In this light, appellant's assertion that including the state contract claim might have prevented it from arguing that claim on the merits in the event of a dismissal from federal court is clearly incorrect.

(Citations and punctuation omitted.) Id. at 945-946 (I).

Further, the Eleventh Circuit precedent on which Plaintiffs rely does not support their argument. In *Mergens v. Dreyfoos*, 166 F3d 1114, 1119 (11th Cir. 1999), the Eleventh Circuit simply held that the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the plaintiffs' state

20

law claim after the district court granted the defendants' motion for judgment on the pleadings with respect to all claims over which the court had original jurisdiction. The Court noted that "discretion over pendent state claims is expressly conferred to district courts by statute." Id.

Because Plaintiffs' arguments are without merit, we deny their motion for reconsideration.

21

November 7, 2023

ON MOTION FOR RECONSIDERATION

Plaintiffs have filed a motion for reconsideration of Division (b) (ii) of our opinion, asserting that we "missed 28 USC § 1367 [setting forth the] doctrine of supplemental jurisdiction [which] superseded the traditional doctrine of pendent jurisdiction years ago."[1] (Punctuation omitted.) According to Plaintiffs, under the supplemental jurisdiction statute, district courts can decline to exercise jurisdiction over such state law claims, and Eleventh Circuit precedent "'strongly encourages or even requires' that the district court decline jurisdiction" in a case such as this. Thus, Plaintiffs maintain that the district court would have declined jurisdiction over their state law claims had they been brought in the federal action because the state law claims "substantially predominate" over the federal claims under 28 USC § 1367 (c)

---

[1] Congress codified the principles of pendent jurisdiction in the supplemental jurisdiction statute, 28 USC § 1367. See *City of Chicago v. Intl. College of Surgeons*, 522 U. S. 156, 165 (II) (A) (118 SCt 523, 139 LE2d 525) (1997). Some federal courts have since used the terms interchangeably. See, e.g., id.; *Rodriguez v. Doral Mtg. Corp.*, 57 F3d 1168, 1175 (III) (B), n.8 (1st Cir. 1995) ("'[s]upplemental jurisdiction' is the currently fashionable term, embraced by Congress in drafting 28 USC § 1367, that now blankets both 'pendent jurisdiction' and . . . 'ancillary jurisdiction' . . . we opt for a middle course and use the terms 'supplemental jurisdiction' and 'pendent jurisdiction' interchangeably"). Thus, while our opinion, at times, refers to "pendent jurisdiction," it is, in substance, the same principle as the more current term, "supplemental jurisdiction."

(2), and because the district court was poised to dismiss Plaintiffs' claims prior to Plaintiffs' voluntary dismissal, see 28 USC § 1367 (c) (3).[2]

That the district court had the discretion to decline to hear the state law claims is not synonymous with the district court lacking jurisdiction or authority to hear the state law claims. See *Acri v. Varian Assocs.*, 114 F3d 999, 1000 (9th Cir. 1997) ("[A] federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in § 1367 (c) — as it has always had[.] That state law claims 'should' be dismissed if federal claims are dismissed before trial . . . has never meant that they *must* be dismissed.") (citations omitted; emphasis in original). As the Seventh Circuit summed up in *Harper Plastics v. Amoco Chem. Corp.*, 657 F2d 939 (7th Cir. 1981),

---

[2] 28 USC § 1367 (c) provides, in its entirety, as follows:
> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if —
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

2

[t]he uncertainty over whether a trial judge would exercise pendent jurisdiction does not justify permitting the institution of a multiplicity of proceedings which may have the effect of harassing defendants and wasting judicial resources. If appellant entertained any doubts at the pleading stage, they should have been resolved in favor of joinder.

A dismissal of the claims for relief under federal law in a complaint to which pendent state claims have been joined does not of itself end the litigation. If it appears that the state issues predominate, whether in terms of proof, of the scope of issues raised, or the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals. Conversely, if the district judge finds that the federal claims are insubstantial, the entire action may be dismissed and the plaintiff will be permitted to pursue the common law claims in a state tribunal. Id. In this light, appellant's assertion that including the state contract claim might have prevented it from arguing that claim on the merits in the event of a dismissal from federal court is clearly incorrect.

(Citations and punctuation omitted.) Id. at 945-946 (I).

Further, the Eleventh Circuit precedent on which Plaintiffs rely does not support their argument. In *Mergens v. Dreyfoos*, 166 F3d 1114, 1119 (11th Cir. 1999), the Eleventh Circuit simply held that the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the plaintiffs' state

3

law claim after the district court granted the defendants' motion for judgment on the pleadings with respect to all claims over which the court had original jurisdiction. The Court noted that "discretion over pendent state claims is expressly conferred to district courts by statute." Id.

Because Plaintiffs' arguments are without merit, we deny their motion for reconsideration.